**Richard C. Miller, F0458**
**BANES HOREY BERMAN & MILLER, LLC**
**Suite 201, Marianas Business Plaza**
**P.O. Box 501969**
**Saipan, MP 96950**
**Tel.: (670) 234-5684**
**Fax: (670) 234-5683**
**Email: RMiller@pacificlawyers.law**

*Attorneys for Plaintiffs*

**IN THE DISTRICT COURT**
**FOR THE NORTHERN MARIANA ISLANDS**

| | |
|---|---|
| ÖZCAN GENÇ, HASAN GÖKÇE, and SÜLEYMAN KÖŞ, on behalf of themselves and all other persons similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>IMPERIAL PACIFIC INTERNATIONAL (CNMI), LLC, and IMPERIAL PACIFIC INTERNATIONAL HOLDINGS LTD.<br><br>Defendants. | Civil Case No. 22-cv-00002<br><br>**FIRST AMENDED COMPLAINT AND JURY DEMAND** |

Plaintiffs Özcan Genç, Hasan Gökçe, and Süleyman Köş, on behalf of themselves and all other persons similarly situated, complain against Defendants Imperial Pacific International (CNMI), LLC ("IPI") and Imperial Pacific International Holdings Ltd. ("IPIH") as follows.

**NATURE OF THE CASE**

1. This is an employment discrimination case, brought pursuant to the provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§2000e, *et seq.*, as amended ("Title VII"). Plaintiffs allege that IPI engaged in a company-wide practice of employment discrimination, both intentional and systemic, on the basis of national origin, against Plaintiffs and a class of similarly situated Turkish employees/former employees as alleged in this Complaint. Plaintiffs

1

seek compensatory and punitive damages, and an award of costs, expenses, and attorneys' fees, for themselves individually and on behalf of the class they seek to represent.

**JURISDICTION**

2. This Court has original jurisdiction of Plaintiffs' Title VII claim pursuant to 28 U.S.C. §§ 1331, 1343(a)(4) and 42 U.S.C. § 2000e-5(f)(3).

**VENUE**

3. Venue is proper in this District pursuant to 28 U.S.C. § 1391(c) and 42 U.S.C. § 2000-5(f)(3). IPI is subject to personal jurisdiction in this District in that it was organized as a limited liability company under the laws of the Commonwealth of the Northern Marianas and owns a not-yet-completed casino/hotel resort in this District, employed Plaintiffs and other members of the class in this District, and committed at least some of the discriminatory acts alleged herein in this District. IPIH is subject to personal jurisdiction in this District because as alleged herein, IPIH is the alter ego of IPI, and because IPIH itself has maintained systematic and continuous presence in the CNMI and the discriminatory acts alleged herein arose out of IPIH's CNMI contacts.

**PARTIES**

**Plaintiffs**

4. Plaintiffs are individuals with Turkish national origin and were, at all relevant times, employees of IPI admitted to the United States under the H-2B temporary foreign worker program as construction workers to build the Imperial Palace casino/hotel resort in Garapan, Saipan, Commonwealth of the Northern Mariana Islands ("CNMI").

5. Plaintiff Özcan Genç ("Özcan") started working for IPI in January 2020. He was a foreman and the leader of the welding and drywall team. Özcan's title on IPI's Certificate of

2

Employment was Construction Carpenter, and his salary was stated therein as $21,840.00 a year. Around December 2020, Özcan filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC"). On October 25, 2021, the EEOC issued him a notice of Right to Sue on that Charge. Copies of that Charge and Notice are attached to this complaint as Exhibits 1A and 1B, respectively. IPI terminated his employment in or about December 2020.

6.     Plaintiff Hasan Gökçe ("Hasan") started working for IPI in January 2020. He was a plumber and a master of pipe installation, and a plumbing foreman. Hasan's title on IPI's Certificate of Employment was Plumber, and his salary was stated therein as $21,840.00 a year. Around December 2020, Hasan filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC"). On October 25, 2021, the EEOC issued him a notice of Right to Sue on that Charge. Copies of that Charge and Notice are attached to this complaint as Exhibits 2A and 2B, respectively. IPI terminated his employment in or about December 2020.

7.     Plaintiff Süleyman Köş ("Suleyman") started working for IPI in January 2020. He was an electrician and was promoted to electrical foreman in June 2020. Suleyman's title on IPI's Certificate of Employment was Electrician, and his salary was stated therein as $17,368.00 a year. However, since his promotion to foreman, his base wage rate increased to $10.50 an hour, which annualizes to a full-time salary of $21,840.00. Around December 2020, Suleyman filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC"). On October 25, 2021, the EEOC issued him a notice of Right to Sue on that Charge. Copies of that Charge and Notice are attached to this complaint as Exhibits 3A and 3B, respectively. IPI terminated his employment in or about December 2020.

8. A total of approximately 107 Turkish workers, including the three named Plaintiffs, were employed by IPI to work on the Imperial Palace casino/hotel resort in 2020 to 2021.

**Defendants**

9. IPI was, at all relevant times, a CNMI limited liability company that engaged in the business of casino gaming and was in the process of building the Imperial Palace casino/hotel resort in Garapan, Saipan, CNMI.

10. At all times relevant, IPI had 15 or more employees and was covered by Title VII.

11. IPIH was, at all relevant times, a company organized under the laws of Bermuda and headquartered in Hong Kong. At all relevant times, IPIH was the sole owner of a British Virgin Islands company named "Best Sunshine International Limited" ("BSI"), and BSI was the sole member and owner of IPI.

12. At all times relevant, IPIH and IPI disregarded corporate formalities and acted as one unified entity. Upon information and belief, persons listed on paper as the management of IPI had no actual decision-making authority and had to follow whatever directions IPIH gave them. As a result, IPI was directly controlled and managed by the same persons who controlled and managed IPIH (whom, for purposes of withholding their identities, IPI referred to as "Hong Kong"—the place where IPIH was headquartered—when it dealt with third parties), instead of IPI's named executives.

13. At all times relevant, IPI was grossly undercapitalized. Upon information and belief, IPIH never invested sufficient capital into IPI so as to cover its actual and potential liabilities as an ongoing concern, and did so with the intention of frustrating creditors' claims.

4

IPI had incurred substantial amounts of liabilities with its employees and former employees and a large number of vendors and is currently facing numerous lawsuits for failure to pay debts when due, some of which have already resulted in judgment against IPI. IPI never had and still does not have, sufficient capital to cover its liabilities.

14. Therefore, for purposes of this lawsuit, IPIH is an alter ego of IPI and is jointly liable with IPI.

**FACTS**

15. During the same period when IPI was employing Plaintiffs and members of the class to work on the Imperial Palace casino/hotel resort, IPI also employed other construction workers, including Taiwanese and Italian workers.

16. All those Taiwanese and Italian workers were, like Plaintiffs and members of the class, employed by IPI under the H-2B visa program.

17. IPI employed those Taiwanese and Italian workers to perform the same types of work that Plaintiffs and members of the class performed.

18. With respect to the types of work they performed, those Taiwanese and Italian workers had the same or similar level of skills, qualifications, and experience as Plaintiffs and members of the class.

19. However, those Taiwanese and Italian workers were paid by IPI at a wage rate significantly higher—as much as three times higher—than Plaintiffs and members of the class.

20. One of the Turkish workers, Imdat Dogaan, was a mechanical fitter. He personally saw the paychecks of Italian workers doing similar work as he. They worked only 8 hour days, while the Turks worked 10 hour days, but the Italians took home more pay.

21. Kadir Celebi also saw that other workers worked fewer hours but brought home more money.

22. Turkish worker Ibrahim Aslan worked as a mechanical installer. He stayed in the same camp as Italian and Taiwanese workers, and they all cashed their paychecks at the same bank. He saw that the Turkish workers were being paid less than the Italian and Taiwanese workers for the same construction work.

23. Turkish worker Ibrahim Isik is an electrician. He observed that Taiwanese and Italian workers doing the same work as he were paid substantially more, although they worked fewer hours weekly.

24. Turkish worker Ahmet Kucukhurman is also an electrician. He observed that Taiwanese and Italian workers doing the same work as he were paid $25 an hour, while his base pay was $8 an hour.

25. Ender Karagoz came to Saipan as a ceramic and leveling screed master. He saw that Italians received higher wages than Turks, and that Mongolian and Taiwanese workers at the construction site were paid more for less work.

26. Turkish worker Ramazan Tekten observed that Taiwanese and Italian workers doing the same job as he worked fewer hours (no overtime) each week but were paid substantially more. He knows this because Taiwanese and Italian workers showed him their paychecks.

27. Plaintiff Suleyman Kos is an electrician. He and others in the electrical group became friends with some of the Taiwanese and Italian workers and saw the paychecks the Taiwanese received. He observed that they were earning as much as three times more money than the Turks even though they worked fewer hours.

6

28.     F. Mert Oztuna and Senol Barut were supervisors of Turkish workers on the ninth through thirteenth floors of the Imperial Pacific hotel. Italian and Taiwanese construction workers and supervisors were assigned other floors based on the same plan and production. When the Turks got their first paycheck, they observed that almost without exception the Italian and Taiwanese workers were paid more than the Turks, despite the fact that the Turks typically worked 10 hour days and weekends while the Italians and Taiwanese usually did not work overtime.

29.     Subsequently, Oztuna and Barut socialized with some of the Italian and Taiwanese workers and learned that their hourly wage was higher than that of the Turkish team.

30.     IPI and IPIH's upper-level management, meaning those persons who were actually in control of IPI's policies and management-level decision-making, intentionally discriminated against employees of Turkish national origin.

31.     At all times relevant, IPI and IPIH never had a system for setting wage rates for construction workers based on objective criteria.

32.     As a result of IPI's discriminatory conduct, Plaintiffs and members of the class have suffered damages, including without limitation, reduced wages.

**CLASS ACTION ALLEGATIONS**

33.     Plaintiffs bring their claims under Title VII as a class action pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure, on behalf of themselves and all others similarly situated, as more specifically described below.

34.     The plaintiffs seek to represent a class, of which they are members, consisting of persons of Turkish national origin who were employed by IPI under the H-2B visa program in 2020 or later.

35. Rule 23(a)(1)—Numerosity. The exact number of members of the class is not known at present, and will be determined through discovery. It is estimated that there were about 107 persons of Turkish national origin who were employed by IPI under the H-2B program during 2020 and 2021.

36. Rule 23(a)(2)—Commonality. There are numerous common questions of fact and law in this action that relate to and affect the claims of relief sought by the class, as well as the anticipated defenses thereto. These common questions include, without limitation, the following:

    a. Whether IPI's H-2B employees of Turkish national origin had the same or similar level of skills, qualifications, and experience with IPI's H-2B employees of Italian and Taiwanese national origin;

    b. Whether, for respective categories of construction work (such as electrical work, plumbing, welding, etc.), IPI paid H-2B employees of Turkish national origin at a wage rate substantially lower than H-2B employees of Italian and Taiwanese national origin;

    c. Whether IPI had any legitimate reason for giving employees of Italian and Taiwanese national origin preferential treatment than employees of Turkish national origin;

    d. Whether there was a pattern or class-wide practice in IPI and IPIH's decision-making in personnel matters of intentional national origin discrimination against employees of Turkish national origin;

e.  Whether, as a result of IPI and IPIH' above-described discriminatory practices, Plaintiffs and the class suffered lost wages and other monetary damages;

f.  Whether IPI and IPIH acted with malice or reckless indifference by the above-described discrimination against Plaintiffs and the class in the face of a perceived risk that its actions would violate their rights such that an award of punitive damages to the class is appropriate; and, if so, how such award should be determined and distributed to members of the class.

37.  Rule 23(a)(3)—Typicality. The claims of the named Plaintiffs, who are representatives of the class, are typical of the claims of the class. The named Plaintiffs have been personally affected and discriminated against by the same practices alleged in this complaint that have harmed the class as a whole and other class members individually.

38.  Rule 23(a)(4)—Adequacy. The named Plaintiffs will fairly and adequately represent the interests of the class. There is no conflict between any named Plaintiff and other members of the class with respect to this action or the claims for relief set forth in this Complaint. The attorney of record for the Plaintiffs is competent in representation of classes in employment discrimination actions and will devote adequate resources to the case.

39.  Rule 23(b)(3)—Case Maintainable Under this Rule. This action is properly maintained as a class action pursuant to subsection (b)(3) of Rule 23. Questions of law and fact common to the members of the class predominate over questions affecting only individual class members; and a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Individual class members have minimal interest in individually maintaining or controlling separate actions in this case; no other litigation has been commenced

9

asserting the interests and claims advanced in this case; interests of fairness, efficiency, and consistency of outcome will be served by concentrating the litigation of the class members' claims in this particular forum and action; this case will be manageable as a class action, and far more easily manageable than the multiplicity of individual actions in the same Court that would result if this case is not permitted to proceed as a class action.

## FIRST CAUSE OF ACTION

### Violation of Title VII

### (On Behalf of All Plaintiffs and Members of the Class)

40. Plaintiffs re-allege and incorporate by reference herein the allegations of all the foregoing paragraphs, inclusive, as set forth above.

41. IPI and IPIH's discrimination against all of the Plaintiffs and members of the class is in violation of the rights secured to Plaintiffs and the class by Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*, as amended by the Civil Rights Act of 1991.

42. By the conduct described above, defendant intentionally violated the rights of Plaintiffs and members of the class under Title VII.

43. As a result of IPI and IPIH's intentional violation of the Title VII rights of the Plaintiffs and the class, those Plaintiffs and members of the class have suffered anguish, humiliation, distress, inconvenience and loss of enjoyment of life, thereby entitling them to compensatory damages.

44. In their discriminatory actions as alleged above, IPI and IPIH have acted with malice or reckless indifference to the rights of the Plaintiffs and class members, thereby entitling them to an award of punitive damages.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for relief as follows:

A. Plaintiffs pray that the Court assign the case for hearing(s) at the earliest practicable date(s) and cause the case to be in every way expedited, pursuant to 42 U.S.C. § 2000e-5(f)(5).

B. Plaintiffs pray that the Court certify a class defined as: persons of Turkish national origin who were employed by IPI under the H-2B visa program in 2020 or later. Plaintiffs further pray that the Court certify the named plaintiffs and their attorney as representatives of this class, pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure.

C. Plaintiffs pray that the Court award compensatory and punitive damages to Plaintiffs and members of the class on whose behalf claims are asserted, in an amount to be proved at trial, within the limits provided by law, if any;

D. Plaintiffs pray that the Court award them their costs, expenses and attorneys' fees, pursuant to 42 U.S.C. § 2000e-5(k).

E. Plaintiffs pray that the Court award such other and further relief as this Court deems equitable and just.

**JURY DEMAND**

Plaintiffs demand a jury trial pursuant to the Seventh Amendment to the Constitution, 42 U.S.C. § 1981a(c), and Rule 38 of the Federal Rules of Civil Procedure.

Date:   July 18, 2022

BANES HOREY BERMAN & MILLER, LLC

/s/
by Richard C. Miller, F0458
Attorney for Plaintiff

11