F I L E D
Clerk
District Court

OCT 14 2022

for the Northern Mariana Islands
By_____
(Deputy Clerk)

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN MARIANA ISLANDS**

| | |
|---|---|
| ÖZCAN GENÇ, HASAN GÖKÇE, and SÜLEYMAN KÖŞ, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>IMPERIAL PACIFIC INTERNATIONAL (CNMI), LLC and IMPERIAL PACIFIC INTERNATIONAL HOLDINGS LTD.,<br><br>Defendants. | Case No. 1:22-CV-00002<br><br>**MEMORANDUM DECISION GRANTING MOTION TO DISMISS FIRST AMENDED COMPLAINT AND GRANTING PLAINTIFFS LEAVE TO AMEND** |

Before the Court is Defendant Imperial Pacific International (CNMI), LLC's ("IPI") motion to dismiss the first amended complaint with prejudice. (Mot. ECF No. 24.) Plaintiffs filed an opposition (Opp'n, ECF No. 26), to which IPI filed a reply (Reply, ECF No. 27.) The matter came for a hearing on October 5, 2022, at which time the Court GRANTED the motion to dismiss, but without prejudice and granted Plaintiffs leave to amend to file a second amended complaint. (Min., ECF No. 32.) The Court memorializes its reasons as follows.

I.     **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Previously, the Court granted IPI's motion to dismiss the original complaint and motion to strike Plaintiffs' class action allegations, but granted Plaintiffs leave to amend the complaint, including the portion on class action. (Min., ECF No. 17; Tr. at 24, ECF No. 23.)

The following facts are taken from the first amended complaint (FAC, ECF No. 20), and exhibits, which include Plaintiffs' EEOC charges and right to sue letters. (ECF Nos. 20-1 - 20-

6.)[1] Plaintiffs Özcan Genç, Hasan Gökçe, and Süleyman Köş are three men of Turkish national origin and who were, at all relevant times, employees of IPI admitted to the United States under the H-2B temporary foreign worker program as construction workers to build the Imperial Palace casino/hotel resort in Garapan, Saipan. (FAC ¶ 4, ECF No. 20.) All three Plaintiffs started working for IPI in January 2020 on a six-month contract. (*Id*. ¶¶ 5, 6, 7; ECF Nos. 20-1, 20-3, 20-5.) Plaintiff Genç started working as a foreman and leader of the welding and drywall team—with an employment certificate title of "Construction Carpenter" and was paid the base rate of $10.50 per hour plus overtime. (FAC ¶ 5; ECF No. 20-1.) Plaintiff Gökçe started working as a plumber, plumbing foreman, and master of pipe installation—with an employment certificate title of "Plumber" and was paid the base rate of $10.50 per hour plus overtime. (FAC ¶ 6; ECF No. 20-3.) Plaintiff Köş started working as an electrician—with an employment certificate title of "Electrician"—at the base rate of $8.35 per hour and was later promoted to electrical foreman in June 2020 and his wage increased to $10.50 per hour plus overtime. (FAC ¶ 7; ECF No. 20-5.) Plaintiffs bring their Title VII claim on behalf of themselves and as a class action pursuant to Federal Rule of Civil Procedure 23(b)(3), seeking to represent an estimated class of 107 "persons of Turkish national origin who were employed by IPI under the H-2B visa program in 2020 or later." (FAC ¶¶ 33-35.)

Towards the end of June 2020, "when H-2B workers were negotiating with IPI to extend [their] contracts for another six months, one Taiwanese worker showed [Plaintiffs] his paycheck[,]" and that is when Plaintiffs "learned that the Taiwanese were being paid $23 an hour, nearly three times what IPI was paying [Plaintiffs], for the same work." (Ex. 1A, 2A, 3A, ECF Nos. 20-1, 20-3, 20-5.) Plaintiffs further learned that "the Italians were being paid $30 an hour, also for the same work that [Plaintiffs] were doing." (*Id.*)

---

[1] Plaintiffs did not attach a copy of Hasan Gökçe's right to sue letter to their first amended complaint; however, a copy of the letter is in the record at ECF No. 1-2 at 6-7.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

IPI started to then miss paydays sometime around June 2020, and Plaintiffs filed a lawsuit with this Court in November 2020 pursuant to the Fair Labor Standards Act (FLSA). (*Id.*) Plaintiffs were subsequently terminated on December 16, 2020. (*Id.*; FAC ¶¶ 5-7, ECF No. 20.) Around December 2020, Plaintiffs individually/separately filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC), alleging discrimination on the basis of both national origin and retaliation.[2] (FAC ¶¶ 5-7, ECF No. 20; Exs. 1A, 2A, 3A, ECF Nos. 20-1, 20-3, 20-5.)

After they received their Notice of Right to Sue letters from the EEOC (ECF Nos. 20-2, 20-20-6, 1-2), Plaintiffs filed the instant employment discrimination lawsuit against IPI and IPI's parent company Imperial Pacific International Holdings Ltd. ("IPIH"). Having received leave to amend their complaint after the Court granted IPI's motion to dismiss, Plaintiffs timely filed their first amended complaint alleging employment discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§2000e et. seq., and asserting the Court's original jurisdiction under Title VII. (FAC ¶¶ 1-2, ECF No. 20.) Specifically, Plaintiffs claim that "IPI engaged in a company-wide practice of employment discrimination, both intentional and systemic, on the basis of national origin, against Plaintiffs and a class of similarly situated Turkish employees/former employees as alleged in this Complaint." (*Id*. ¶ 1.) As facts to support their pattern or practice discrimination claim, Plaintiffs specifically allege that:

> 15. During the same period when IPI was employing Plaintiffs and members of the class to work on the Imperial Palace casino/hotel resort, IPI also employed other construction workers, including Taiwanese and Italian workers.

---

[2] Their retaliation claim formed part of the lawsuit in *Genc v. Imperial Pac. Int'l (CNMI) LLC*, No. 1:20-cv-00031, albeit under the FLSA.

16. All those Taiwanese and Italian workers were, like Plaintiffs and members of the class, employed by IPI under the H-2B visa program.

17. IPI employed those Taiwanese and Italian workers to perform the same types of work that Plaintiffs and members of the class performed.

18. With respect to the types of work they performed those Taiwanese and Italian workers had the same or similar level of skills, qualifications, and experience as Plaintiffs and members of the class.

19. However, those Taiwanese and Italian workers were paid by IPI at a wage rate significantly higher—as much as three times higher— than Plaintiffs and members of the class.

(*Id.* ¶¶ 15-19.) [3] Plaintiffs name several Turkish workers with various positions who saw that Italian and Taiwanese workers were paid more than the Turkish workers for the same work. (*Id.* ¶¶ 20-27.) For example, Turkish electrician Ahmet Kucukhurman "observed that Taiwanese and Italian workers doing the same work as he were paid $25 an hour, while his base pay was $8 an hour." (*Id.* ¶ 24.) Two supervisors of the Turkish workers, F. Mert Oztuna and Senol Barut, "socialized with some of the Italian and Taiwanese workers and learned that their hourly wage was higher than that of the Turkish team" even though the Turkish, Taiwanese, and Italian workers worked on the same plan and production. (*Id.* ¶¶ 28-29.) Plaintiffs assert that Defendants IPI and IPIH's "upper-level management, meaning those persons who were actually in control of IPI's policies and management-level decision-making, intentionally discriminated against employees with Turkish national origin" and that both Defendants "never had a system for setting wage rates for construction workers based on objective criteria." (*Id.* ¶¶ 30-31.) Because of IPI's

---

[3] The only difference in Paragraphs 15-19 from the original complaint and the first amended complaint is that Plaintiffs now allege Italian workers were also treated better.

1    discriminatory conduct, Plaintiffs assert class members, including themselves, suffered damages.

2    (*Id.* ¶ 32.)

3    Plaintiffs also sue IPIH under an alter ego theory. (*Id.* ¶¶ 3, 14.) As relief, Plaintiffs seek:

4    for the case to be expedited pursuant to 42 U.S.C. § 2000e-5(f)(5); class certification;

5
6    compensatory and punitive damages; costs, expenses, and attorneys' fees pursuant to 42 U.S.C.

7    2000e-5(k); and any other such relief that is just. (*Id.* at 11.)

8    II.    **LEGAL STANDARD**

9    IPI seeks to dismiss with prejudice Plaintiffs' Title VII claim for failure to state a claim

10   pursuant to Federal Rule of Civil Procedure 12(b)(6).

11       **A. Motion to Dismiss**

12
13   To survive a motion to dismiss for failure to state a claim upon which relief can be granted

14   under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a pleading "must contain sufficient

15   factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v.*

16   *Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570

17   (2007)). The factual allegations need not be detailed, but a plaintiff must provide "more than an

18   unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. "For

19   purposes of ruling on a Rule 12(b)(6) motion, the Court 'accept[s] factual allegations in the

20
21   complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving

22   party.'" *P&G v. QuantifiCare Inc.*, 288 F. Supp. 3d 1002, 1010 (N.D. Cal. 2017) (quoting

23   *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008)). In determining

24   whether a motion to dismiss should be granted, there is a two-step process: first, "by identifying

25   pleadings that, because they are no more than conclusions, are not entitled to the assumption of

26   truth," and second, "[w]hen there are well-pleaded factual allegations, a court should assume their

27
28

1    veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556

2    U.S. at 679.

3          Generally, when ruling on a 12(b)(6) motion, a court may consider only the pleadings and

4    limited materials, such as "documents attached to the complaint, documents incorporated by

5
6    reference in the complaint, or matters of judicial notice." *United States v. Ritchie*, 342 F.3d 903,

7    908 (9th Cir. 2003). If a court considers other evidence, "it must normally convert the 12(b)(6)

8    motion into a Rule 56 motion for summary judgment, and it must give the nonmoving party an

9    opportunity to respond." *Id.* at 907.

10         If a motion to dismiss is granted, "leave to amend should be granted unless it is clear that

11   the deficiencies of the complaint cannot be cured by amendment." *Dog Bites Back, LLC v.*

12
     *JPMorgan Chase Bank, N.A.*, 563 F. Supp. 3d 1120, 1123 (D. Nev. 2021) (citing *DeSoto v. Yellow*

13
     *Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992)). Federal Rule of Civil Procedure 15(a)
14
15   dictates that leave should be given freely "when justice so requires" and "in the absence of a reason

16   such as 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to

17   cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by

18   virtue of allowance of the amendment, futility of the amendment, etc.'" *Id.* (quoting *Foman v.*

19
     *Davis*, 371 U.S. 178, 182 (1962)). The Court's "discretion to deny leave to amend is particularly
20
     broad where plaintiff has previously amended the complaint." *Ascon Props., Inc. v. Mobil Oil Co.*,
21
22   866 F.2d 1149, 1160 (9th Cir. 1989) (citations omitted).

23         **B.  Employment Discrimination**

24         To state an individualized claim for race-based disparate treatment under Title VII, a

25   plaintiff must allege sufficient facts to show that: "(1) [plaintiff] is a member of a protected class;

26   (2) [plaintiff] was qualified for [the] position; (3) [plaintiff] experienced an adverse employment

27

28

action; and (4) similarly situated individuals outside [plaintiff's] protected class were treated more favorably, or other circumstances surrounding the adverse employment action give rise to an inference of discrimination." *Peterson v. Hewlett-Packard Co.*, 358 F.3d 599, 603 (9th Cir. 2004); *see Campbell v. Haw. Dep't of Educ.*, 892 F.3d 1005, 1012 (9th Cir. 2018) (noting same). To satisfy this fourth prong on "similarly situated," the plaintiff "must demonstrate that he [or she] was similar to [the] proposed comparator 'in all material respects.'" *Sheets v. City of Winslow*, 859 F. App'x. 161, 162 (9th Cir. 2021) (quoting *Moran v. Selig*, 447 F.3d 748, 755 (9th Cir. 2006)). "Individuals are similarly situated when they have similar jobs and display similar conduct." *Vasquez v. County of Los Angeles*, 349 F.3d 634, 641 (9th Cir. 2003).

The Court is mindful that a plaintiff does not need to plead a prima facie case in order to survive a motion to dismiss. *McGary v. City of Portland*, 386 F.3d 1259, 1262 (9th Cir. 2004) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510-11 (2002)). The analysis at the motion to dismiss phase for an employment discrimination case is focused on whether there are "enough facts to state a claim to relief that is *plausible* on its face[.]" *United States v. Valdez-Novoa*, 780 F.3d 906, 916 n.1 (9th Cir. 2015) (quoting *Twombly*, 550 U.S. at 569-70) (noting the Supreme Court's holding that the plausibility standard is not contrary to its prior holding that an employment discrimination complaint does not need to contain facts establishing a prima facie case of discrimination). Nevertheless, district courts in the Ninth Circuit look to the elements of a prima facie case in analyzing the sufficiency of an employment discrimination complaint. *See Sablan v. A.B. Won Pat Int'l Airport Auth.*, No. 10-00013, 2010 U.S. Dist. LEXIS 130692, at *13, 2010 WL 5148202, at *5 (D. Guam Dec. 9, 2010) (citations omitted) ("[C]ourts are now looking to those elements to analyze a motion to dismiss—so as to decide, in the light of 'judicial experience and common sense,' whether the challenged complaint 'contain[s] sufficient factual matter, accepted

as true, to "state a claim to relief that is plausible on its face.""""); *Carter v. Brennan*, No. 2:18-cv-00823 MCE AC (PS), 2018 U.S. Dist. LEXIS 172048, at *6, 2018 WL 4810808, at *2 (E.D. Cal. Oct. 4, 2018) (citations omitted) ("[T]he court must look to these elements [of a prima facie case of discrimination] to decide whether plaintiff's complaint as pleaded contains sufficient factual matter, accepted as true, to state a plausible claim for relief."), *report and recommendation adopted*, No. 2:18-CV-00823 MCE AC(PS), 2019 U.S. Dist. LEXIS 11066, 2019 WL 296948 (E.D. Cal. Jan. 23, 2019).

## III.   DISCUSSION

### A.  FAC Lacks Facts Regarding Sufficiently Similar Comparators

The main issue raised in this motion to dismiss the FAC is whether Plaintiffs plead sufficient facts to plausibly satisfy the fourth element of the prima facie case of employment discrimination that similarly situated employees not in their protected class received more favorable treatment. Put another way, whether the FAC contains facts showing similarly situated, non-Turkish individuals who were paid more than their Turkish "counterparts" for doing the same work. And because the Court previously dismissed Plaintiffs' complaint for the same deficiency, IPI contends this Court should grant the dismissal with prejudice. After reviewing the parties' arguments and the applicable law, the Court agrees with IPI that Plaintiffs have not sufficiently plead facts about similarly situated comparators, but grants Plaintiffs leave to amend their complaint.

IPI highlights that Plaintiffs do not allege facts supporting their contention that they (or other members of their class) were similarly situated to the Italian and Taiwanese workers; there are "no factual allegations describing the jobs, titles, seniority, qualifications, or performance

levels of any of the Italian and Taiwanese workers who plaintiffs allege IPI paid more than them."[4] (Mot. 6-7.) In response, Plaintiffs rely upon *Mallory v. Gartner, Inc.*, No. 2:21-cv-462-SPC-MRM, 2021 WL 3857652, *3 (M.D. Fla. Aug. 30, 2021), for the proposition that they do not need to allege facts regarding comparators at the motion to dismiss phase since such information may only be available once discovery commences. (Opp'n 2-3.) Defendant IPI also highlights Plaintiffs' mischaracterization of law regarding the standard required for pleading facts regarding comparators at the complaint phase – Defendant does not assert that Plaintiffs must prove their comparators at this stage, rather Plaintiffs "must allege sufficient, particularized facts for the Court to plausibly infer at the motion-to-dismiss stage that Plaintiffs' alleged comparators are similarly situated to them[.]" (Reply 4.)

As described above, "individuals are similarly situated when they have similar jobs and display similar conduct." *Vasquez*, 349 F.3d at 641. Even construing the first amended complaint in the light most favorable to Plaintiffs, Plaintiffs have not plead sufficient facts to conclude that the Italians and Taiwanese are similarly situated – that the Turkish "have similar jobs and display similar conduct" to the Italians and Taiwanese.

Notably absent from the first amended complaint are facts that state the Taiwanese and/or Italian individuals who had similar jobs to Plaintiffs and were performing similar work to Plaintiffs were paid more than Plaintiffs. In the beginning of their opposition brief, Plaintiffs provide a narrative of facts about the pay disparity, including claims that Turkish electricians were "paid substantially less than Taiwanese and Italian electricians" (Opp'n 1-2, ECF No. 26); however, the

---

[4] IPI contends that while "[t]he only factual similarity Plaintiffs allege between themselves and other putative class members, on the one hand, and the workers of Taiwanese and Italian origin, on the other hand, is that IPI employed all of them under the H-2B visa program," such fact is not relevant to determining comparators. (Mot. 7, ECF No. 24 (citing FAC ¶ 16, ECF No. 20).)

amended complaint does not contain such facts. Thus, the Court did not consider these allegations as plead in the FAC, but did factor them as Plaintiffs' proffer of what they can plead specifically in their second amended complaint if leave to amend was granted.

Furthermore, Plaintiffs are all foreman (FAC ¶¶ 5-7) but the first amended complaint does not include facts about any Taiwanese or Italian foreperson beyond themselves. Plaintiffs specify that their certificates of employment from IPI state that they are construction carpenters, plumbers, and electricians (*id.*) but the FAC only mentions other electricians beyond Plaintiffs. Specifically, two Turkish electricians state that they "observed . . . Taiwanese and Italian workers doing the same work as [them] were paid" more than them. (*Id.* ¶¶ 23-24.) Mr. Kucukhurman even specifies that he was paid $8 an hour as an electrician while "Taiwanese and Italian workers doing the same work as he were paid $25 an hour[.]" (*Id.* ¶ 24.) Plaintiff Köş earned $8.35 an hour as an electrician, and $10.50 an hour as an electrical foreman. (ECF No. 20-5.) So, as both an electrician and an electrical foreman, Mr. Köş was making less than Taiwanese and Italian "workers doing the same work." However, even with these drawn inferences, it is unclear whether there are similarly situated, non-Turkish individuals who made more than Mr. Köş. Stating that Turkish electrician Mr. Kucukhurman "observed that Taiwanese and Italian *workers* doing the same work as he were paid $25 an hour, while his base pay was $8 an hour" (FAC ¶ 24) (emphasis added) is insufficient to show a similarly situated comparator because the term "workers" is too broad to conclude that they have similar jobs as him such that they are similarly situated individuals. As discussed at the hearing, the other paragraphs are similarly deficient.[5] Plaintiffs' use of the term "workers"

---

[5] Conversely, other facts alleged in the First Amended Complaint are too vague and simply state that Taiwanese and/or Italian workers were paid more than Turkish workers. (FAC ¶¶ 19, 21, 25, 27, 28-29, ECF No. 20.) As the Court noted at the hearing on the original motion to dismiss, such allegations are too vague as Plaintiffs could be comparing a foreman to a supervising engineer. (Tr. at 15:4-21.)

throughout the first amended complaint is too broad to conclude that that there were similarly situated individuals outside of Plaintiffs' class that were treated more favorably. Therefore, the first amended complaint does not contain sufficient facts to plausibly allege that the Italian and Taiwanese are appropriate comparators. *See Nguyen v. Boeing Co.*, No. C15-793RAJ, 2016 U.S. Dist. LEXIS 176041, at *8, 2016 WL 7375276, at *3 (W.D. Wash. Dec. 20, 2016) (dismissing disparate treatment claim because the plaintiff's conclusory allegations that a comparator's salary was higher did not demonstrate that the plaintiff was treated differently despite displaying *similar conduct* (i.e. similarly situated)); *Ardalan v. McHugh*, No. 13-cv-01138-BLF, 2014 U.S. Dist. LEXIS 106984, at *27, 2014 WL 3846062, at *8 (N.D. Cal. Aug. 4, 2014) (citing *Vasquez*, 349 F.3d at 641) ("A cursory pleading that, in general, European and Eastern European employees of DLI were treated better than Middle Eastern and Asian employees of DLI does not suffice. Plaintiff has not pled that any of those European or Eastern European employees were similarly situated to her in all material respects.").

Contrary to Plaintiffs' assertion that an analysis of comparators is inappropriate at the pleading stage when pursuing a claim of disparate treatment, the complaint must contain facts about similarly situated individuals being treated more favorably or other facts giving rise to an inference of discrimination. *See Sheets*, 589 Fed.Appx. at 162 (affirming grant of motion to dismiss because the plaintiff failed to plead facts for a court to determine whether the alleged comparator was similarly situated); *Ardalan*, 2014 U.S. Dist. LEXIS 106984, at *34, 2014 WL 3846062, at *10 (citations omitted) ("Plaintiff must sufficiently plead that these employees are similarly situated to her."); *Dixon v. Dep't of Educ.*, No. 16-00110 DKW-KJM, 2018 U.S. Dist. LEXIS 80980, at *35-36, 2018 WL 2207126, at *12 (D. Haw. May 14, 2018) (citations omitted) (finding that the plaintiff failed to state a claim of race based disparate treatment as she failed to plead facts

that she was similarly situated to a purported comparator beyond their shared job title), *aff'd sub nom.* 783 F. App'x 787 (9th Cir. 2019). Plaintiffs' reliance upon *Mallory,* 2021 WL 3857652 is misplaced because there the court cited several decisions wherein courts "dismiss[ed] complaints for failing to allege enough factual support on the comparators" to reach a similar conclusion that the plaintiff did "not allege how she and the proffered comparators were similarly situated." *Mallory*, at *3. In *Mallory*, the court found that the plaintiff did "not plausibly allege[] that any similarly situated employees were treated differently" as she only stated that the defendant subjected her "to a more rigorous training program than her other non-Hispanic co-workers and refused to transfer to a more suitable territory." *Id.* Similarly, Plaintiffs' cited case of *Berney v. Apple Inc.*, No. 3:20 CV 1379, 2021 WL 6334985, at *3 (D. Conn. May 27, 2021) is inapposite because while the *Berney* court noted that the issue regarding whether individuals were appropriate comparators "may be addressed at a later stage of this litigation[,]" the court there was resolving a motion to compel discovery wherein the defendant was withholding discovery based on its own determination that the discovery did not pertain to comparators. The *Berney* court held that the plaintiff was entitled to that discovery so he could make his own determination of who is similarly situated. *Id.* Furthermore, the *Berney* court acknowledged the plaintiff's burden to compare herself to comparators that were "similarly situated in all material respects." *Id.* (citations omitted). Finally, *Bhatinagar v. Meyer*, No. 21-126-CFC, 2021 WL 7209368, at *4 (D. Del. Dec. 20, 2021) lends no support to Plaintiffs as there the plaintiff had plead facts to identify a comparator to himself, "'[a]n able and qualified Hindu, South Asian male attorney of Indian descent' who 'was terminated for a minor offense'"– compared to "poorly performing Christian, white, native born, female attorneys."

//

12

**B.  Leave to Amend**

IPI argues that the first amended complaint should be dismissed with prejudice because Plaintiffs failed to heed the Court's instructions on amending a complaint to include factual allegations beyond conclusory assertions. (Mot. 19-20.) At the hearing, Plaintiffs argued that leave to amend should be granted because the first amended complaint could be ameliorated to allege sufficiently similar comparators with changes discussed during the hearing.

Bearing in mind "[t]he Ninth Circuit['s] . . . liberal policy favoring amendments;" *Johnson v. Winco Foods, LLC*, No. ED CV 17-2288-DOC (SHKx), 2018 WL 6017012, at *9 (C.D. Cal. Apr. 2, 2018) (citing *DeSoto*, 957 F.2d at 658); the Court grants Plaintiffs leave to amend their first amended complaint. Contrary to IPI's assertion, leave to amend would not be futile as demonstrated by the fruitful discussion held at the hearing detailing the deficiencies that need to be corrected to satisfy the fourth prong of the prima facie case. *Cf. Ardalan*, 2014 U.S. Dist. LEXIS 106984, at *34, 2014 WL 3846062, at *10 (granting the plaintiff leave to amend her Title VII claims after identifying the defects that need to be corrected in light of new facts the plaintiff alleged in a supplemental brief).

Additionally, *Sheets*, which IPI cites, does not mandate denial of leave to amend. In *Sheets*, the Ninth Circuit affirmed the district court's dismissal of the second amended complaint with prejudice as the plaintiff failed to cure the deficiencies previously identified in the first amended complaint; however, in doing so, the Ninth Circuit noted the plaintiff's "numerous opportunities to provide the necessary factual allegations[.]" 85 Fed.Appx. at 162-63; *but see DeFrancesco v. Ariz. Bd. of Regents*, No. CV-20-00011-TUC-CKJ, 2021 WL 4170673, at *5, 2021 U.S. Dist. LEXIS 174567, at *17-18 (D. Ariz. Sept. 14, 2021) (dismissing first amended complaint because the plaintiff proffered insufficient allegations "despite the Court's advice"), *appeal filed*, No. 21-

16530 (9th Cir. Sept. 17, 2021). Unlike *Sheets*, this case is only at the first amended complaint; Plaintiffs here have not been provided "numerous opportunities[,]" they have only been provided leave to amend once. Additionally, IPI has not identified "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment" that would warrant dismissal with prejudice. *See Dog Bites Back LLC*, 563 F. Supp.3d at 1123 (citation omitted). The Court exercises its discretion and provides Plaintiffs leave to amend; however, the Court may be less forgiving if Plaintiffs fail to plausibly allege sufficiently similar comparators in their second amended complaint.

IV.     **CONCLUSION**

Because the first amended complaint fails to adequately plead facts that show non-Turkish, similarly situated individuals were paid more than Plaintiffs, the Court DISMISSES the first amended complaint as to the three named Plaintiffs. As such, the Court also DISMISSES the class action claim because the underlying individual claims fail. *See Young v. AmeriGas Propane, Inc.*, No. 14-cv-00583-BAS (RBB), 2014 WL 5092878, at *5 (S.D. Cal. Oct. 9, 2014) ("Since Plaintiff's case must be dismissed, the class action can no longer stand.").

The Court GRANTS Plaintiffs leave to amend. Furthermore, at the hearing, the Court granted Plaintiffs' oral motion for an extension of time to file the second amended complaint such that it is due by November 4, 2022. Additionally, should IPI require additional time to respond to the second amended complaint, whether by answer or motion, such request for additional time will not be opposed by Plaintiffs and will be granted by the Court.

14

1        SO ORDERED this 14th day of October, 2022.

2

3                                        _____
4                                        RAMONA V. MANGLONA
                                         Chief Judge
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28