1    Joey P. San Nicolas
     SAN NICOLAS LAW OFFICE, LLC
2    2nd Fl, ICC, Room 203
     Gualo Rai, Saipan
3    Telephone: (670) 234-7659
     Email: jpsn@sannicolaslaw.net
4

5    Daniel H. Weiner (admitted *pro hac vice*)
     Amina Hassan (admitted *pro hac vice*)
     Eleanor C. Erney (admitted *pro hac vice*)
6    HUGHES HUBBARD & REED LLP
     One Battery Park Plaza
7    New York, NY 10004-1482
     Tel.: (212) 837-6000
8    Fax: (212) 422-4726
     daniel.weiner@hugheshubbard.com
9    amina.hassan@hugheshubbard.com
     eleanor.erney@hugheshubbard.com
10

     *Attorneys for Defendant Imperial Pacific International (CNMI), LLC*
11

12            IN THE UNITED STATES DISTRICT COURT
             FOR THE NORTHERN MARIANA ISLANDS

13

| | |
|---|---|
| ÖZCAN GENÇ, HASAN GÖKÇE, and SÜLEYMAN KÖŞ, on behalf of themselves and all other persons similarly situated, | Civil Case No. 1:22-cv-00002 |
| Plaintiffs, | **DEFENDANT IMPERIAL PACIFIC INTERNATIONAL (CNMI), LLC'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT WITH PREJUDICE** |
| vs. | |
| IMPERIAL PACIFIC INTERNATIONAL (CNMI), LLC, and IMPERIAL PACIFIC INTERNATIONAL HOLDINGS LTD. | |
| Defendants. | |

       Defendant Imperial Pacific International (CNMI), LLC ("IPI") moves pursuant to Rule

12(b)(6) of the Federal Rules of Civil Procedure to dismiss with prejudice and in its entirety

1

1  Plaintiffs' Second Amended Complaint and Jury Demand (ECF No. 35) because Plaintiffs fail to

2  state a plausible claim for relief.

3  Dated:  November 18, 2022                    Respectfully submitted,

4

5                                                            */s/ Amina Hassan*

6                                                            Daniel H. Weiner (admitted *pro hac vice*)
                                                              Amina Hassan (admitted *pro hac vice*)
                                                              Eleanor Erney (admitted *pro hac vice*)

7                                                            HUGHES HUBBARD & REED LLP
                                                              One Battery Park Plaza

8                                                            New York, NY 10004-1482
                                                              Tel.: (212) 837-6000

9                                                            Fax: (212) 422-4726
                                                              daniel.weiner@hugheshubbard.com

10                                                           amina.hassan@hugheshubbard.com
                                                              eleanor.erney@hugheshubbard.com

11

12                                                           Joey P. San Nicolas
                                                              SAN NICOLAS LAW OFFICE, LLC

13                                                           2nd Fl, ICC, Room 203
                                                              Gualo Rai, Saipan

14                                                           Telephone: (670) 234-7659
                                                              jpsn@sannicolaslaw.net

15
                                                              *Attorneys for Defendant Imperial Pacific*
16                                                           *International (CNMI), LLC*

17

18

19

20

21

22

23
                                                              2
24

Joey P. San Nicolas
SAN NICOLAS LAW OFFICE, LLC
2nd Fl, ICC, Room 203
Gualo Rai, Saipan
Telephone: (670) 234-7659
Email: jpsn@sannicolaslaw.net

Daniel H. Weiner (admitted *pro hac vice*)
Amina Hassan (admitted *pro hac vice*)
Eleanor Erney (admitted *pro hac vice*)
HUGHES HUBBARD & REED LLP
One Battery Park Plaza
New York, NY 10004-1482
Tel.: (212) 837-6000
Fax: (212) 422-4726
daniel.weiner@hugheshubbard.com
amina.hassan@hugheshubbard.com
eleanor.erney@hugheshubbard.com

*Attorneys for Defendant Imperial Pacific International (CNMI), LLC*

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN MARIANA ISLANDS

| | |
|---|---|
| ÖZCAN GENÇ, HASAN GÖKÇE, and SÜLEYMAN KÖŞ, on behalf of themselves and all other persons similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>IMPERIAL PACIFIC INTERNATIONAL (CNMI), LLC, and IMPERIAL PACIFIC INTERNATIONAL HOLDINGS LTD.<br><br>Defendants. | Civil Case No. 1:22-cv-00002<br><br>**DEFENDANT IMPERIAL PACIFIC INTERNATIONAL (CNMI), LLC'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS THE SECOND AMENDED COMPLAINT WITH PREJUDICE** |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

**TABLES OF CONTENTS**

**Page(s)**

Introduction....................................................................................................................1

Argument .......................................................................................................................3

I.  THE COURT SHOULD DISMISS PLAINTIFFS' SECOND AMENDED
    COMPLAINT FOR FAILURE TO STATE A PLAUSIBLE CLAIM FOR
    RELIEF. ................................................................................................................3

    A.  Plaintiffs Do Not Allege Facts Supporting the Inference that Taiwanese
        and Italian Employees Referenced in the Second Amended Complaint
        Were "Similarly Situated" to Plaintiffs or Purported Class Members....................4

        1.  Plaintiffs' New Allegations................................................................5

        2.  Plaintiffs' Reprised Allegations ................................................13

    B.  Plaintiffs Allege No Other Factual Basis to Support Their Claim of
        Pattern-and-Practice Discrimination. ........................................................13

    C.  Plaintiffs Do Not State a Claim for Individual Relief Either................................14

II. THE COURT SHOULD DISMISS PLAINTIFFS' SECOND AMENDED
    COMPLAINT WITH PREJUDICE.........................................................................15

Conclusion ...................................................................................................................17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ...................................................................3, 4, 13

*Barrett v. Kaiser Found. Health Plan of the Nw.*, No. 3:14-cv-020160-SI, 2015 WL
    1491037 (D. Or. Apr. 1, 2015).............................................................................13

*Bartholomew v. Lowe's Home Centers, LLC*, No.: 2:19-cv-695-FtM-38MRM, 2020 WL
    321372 (M.D. Fla. Jan. 21, 2020) .........................................................................5

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ...................................................3

*Bess v. Adams & Assocs., Inc.*, No. 2:17-cv-00173-TLN-KJN, 2018 WL 4801951 (E.D.
    Cal. Oct. 3, 2018) ...............................................................................................12

*Cherosky v. Henderson*, 330 F.3d 1243 (9th Cir. 2003) .................................................4

*Demekpe v. Cnty. of L.A.*, No. CV 15-6007-DDP (KES), 2015 WL 13237302 (C.D. Cal.
    Dec. 8, 2015)........................................................................................................5

*Dixon v. Haw. Dep't of Educ.*, CV. NO. 16-00110 DKW-KJM, 2018 WL 2207126 (D.
    Haw. May 14, 2018) ...........................................................................................12

*Dog Bites Back, LLC v. JPMorgan Chase Bank, N.A.*, 563 F. Supp. 3d 1120 (D. Nev.
    2021) ...................................................................................................................15

*In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049 (9th Cir. 2008) ......................................10

*Grigorescu v. Bd. of Trustees of the San Mateo Cnty. Cmty. Coll. Dist.*, No. 18-cv-05932-
    EMC, 2019 WL 1790472 (N.D. Cal. Apr. 24, 2019) ...........................................12

*Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324 (1977).......................................4

*Johnson v. Winco Foods, LLC*, No. ED CV 17-2288-DOC, 2018 WL 6017012 (C.D. Cal.
    Apr. 2, 2018) ......................................................................................................15

*Krish v. Conn. Ear, Nose & Throat, Sinus & Allergy Specialists, P.C.*, 607 F. Supp. 2d
    324 (D. Conn. 2009) ...........................................................................................14

*Loos v. Immersion Corp.*, 762 F.3d 880 (9th Cir. 2014)...............................................17

*Moran v. Selig*, 447 F.3d 748 (9th Cir. 2006) ........................................................4, 5

*Peterson v. Hewlett-Packard Co.*, 358 F.3d 599 (9th Cir. 2004) ................................5

*Raby v. Westside Transit*, No. Civ.A. 03-1000, 2006 WL 1877000 (E.D. La. June 16, 2006), *aff'd*, 224 F. App'x 384 (5th Cir. 2007) ..............................................11

*Renati v. Wal-Mart Stores, Inc.*, No. 19-cv-02525-CRB, 2019 WL 5536206 (N.D. Cal. Oct. 25, 2019) ..............................................................................................13

*Rubinow v. Ingelheim*, No. 3:08-cv-1697 (VLB), 2010 WL 1882320 (D. Conn. May 10, 2010) ............................................................................................................14

*Sablan v. A.B. Won Pat Int'l Airport Auth.*, No. 10-00013, 2010 U.S. Dist. LEXIS 130692, 2010 WL 5148202 (D. Guam Dec. 9, 2010) ............................................11

*Sacco v. Mouseflow, Inc.*, No. 220CV02330TLNKJN, 2022 WL 4663361 (E.D. Cal. Sept. 30, 2022) ................................................................................................10

*Sheets v. City of Winslow*, 859 F. App'x. 161 (9th Cir. 2021) ........................4, 5, 16, 17

*Stern v. State Univ. of N.Y.*, No. 16-CV-5588 (NGG) (LB), 2018 U.S. Dist. LEXIS 173054 (E.D.N.Y. Sept. 30, 2018) ........................................................................12

*United States v. Nobel Learning Cmtys, Inc.*, 676 F. Supp. 2d 379 (E.D. Pa. 2009) ....................14

*Vasquez v. Cnty. of L.A.*, 349 F.3d 634 (9th Cir. 2003) ................................................4

*Wang v. Am. Sai Green Corp.*, No. 1:13-cv-00026, 2014 WL 1365740 (D. N. Mar. I. Apr. 4, 2014) ......................................................................................................3

*Werst v. Sarar USA Inc.*, No. 17-CV-2181 (VSB), 2018 U.S. Dist. LEXIS 44124 (S.D.N.Y. Mar. 16, 2018) ........................................................................................5

*Young v. AmeriGas Propane, Inc.*, No. 14-cv-00583-BAS (RBB), 2014 WL 5092878 (S.D. Cal. Oct. 9, 2014) ..........................................................................................15

**Statutes and Rules**

Civil Rights Act of 1964 Title VII .................................................................... *passim*

Fed. R. Civ. P. 8(a)(2) ................................................................................................4

Fed. R. Civ. P. 12(b)(6) ..............................................................................................3

Fed. R. Civ. P. 23(a)(3).................................................................................................................15

**Introduction**

The Second Amended Complaint ("SAC") is Plaintiffs' third attempt at pleading a pattern-and-practice discrimination case against IPI; it must also be their last.  Despite the Court affording Plaintiffs two opportunities to amend their pleading and providing specific instructions on how and what to amend, the SAC suffers from the same fatal flaw as Plaintiffs' prior two attempts:  Plaintiffs fail to plead a plausible comparator to themselves or a purported class member, much less a sufficient number of plausibly pleaded comparators to satisfy the requirements of a pattern-and-practice claim.  Dismissal of the Second Amended Complaint with prejudice is thus warranted.

Plaintiffs Özcan Genç, Hasan Gökçe and Süleyman Köş are former IPI workers who worked on construction of the Imperial Palace Casino and Hotel Resort in Garapan, Saipan in the Commonwealth of the Northern Mariana Islands.  (SAC ¶¶ 4-7.)[1]  Pursuant to Title VII of the Civil Rights Act of 1964, Plaintiffs allege that IPI "engaged in a company-wide practice of employment discrimination, both intentional and systemic, on the basis of national origin, against [them] and a class of similarly situated Turkish employees" by paying them a lower wage rate than IPI paid to its Taiwanese and Italian workers.  (*Id*. ¶ 1.)  However, as in their prior pleadings, Plaintiffs fail to identify a single Taiwanese or Italian worker similarly situated to a Plaintiff or purported class member.

On this third shot at reframing their pleading, Plaintiffs attempt to circumvent that requirement by asserting that, within each "ethnic national team" at IPI, "all the construction workers were paid at the same rate, all foremen were paid at the same rate, and all supervisors

---

1.  Allegations in the Second Amended Complaint are accepted as true only for purposes of this motion.

1

were paid at the same rate."  (*Id*. ¶ 25.)  However, Plaintiffs' new theory cannot help them. Plaintiffs' own pleading informs the Court that the employment conditions, trades (including carpentry, plumbing and electrical), and roles and specialties—such as "MEP" (mechanical, engineering, plumbing), welding, and aluminum curtain wall installments—at the Saipan construction site varied among crews of different national origin:  Turkish workers were permitted to work overtime, Italian workers were not; only Turkish workers had plumbers and electricians, teams of other national origin did not; and while Turkish workers performed the MEP work on different floors, Italian workers were required to work on aluminum curtain wall installations across floors, and Taiwanese workers "worked on all floors as needed."  Therefore, the Court cannot generally compare the Turkish construction workers with Italian and Taiwanese construction workers, Turkish forepersons with Italian and Taiwanese forepersons, or Turkish supervisors with Italian and Taiwanese supervisors because those groups—by Plaintiffs' own admission—have differences other than their difference in national origin.  As the Court instructed Plaintiffs in granting them leave to amend the First Amended Complaint, Plaintiffs have to "plausibly allege sufficiently similar comparators in their second amended complaint" (ECF 34 (Memorandum Decision Granting Motion to Dismiss First Amended Complaint ("Mem. Dec.")) at 14.) They do not do so.

Rather, Plaintiffs identify in the SAC only a single Italian worker—Antonino Guzzardi. Plaintiffs do not clearly identify Mr. Guzzardi's seniority; nor do they provide the Court sufficient particularized facts regarding his job responsibilities, qualifications and experience for the Court to reasonably infer whether he is similarly situated to any Plaintiff or another purported class member.  Plaintiffs also do not identify any Italian or Taiwanese forepersons (even though all the named Plaintiffs are foremen), nor any supervisors.  Nor do Plaintiffs allege facts from

1    which the Court can infer that uniform wage rates applied to all Taiwanese construction workers,

2    forepersons and supervisors, respectively, and if so, what those rates were.  In addition, the SAC

3    demonstrates that Plaintiffs cannot allege a comparator for at least two of the three named

4    Plaintiffs (an electrician and a plumber), and the Court still does not know the qualifications and

5    experience of a single Italian or Taiwanese worker.

6              That sufficiently pleaded comparators still escape Plaintiffs on their third attempt at

7    framing a pattern-and-practice claim against IPI not only underscores the implausibility of that

8    claim, but also the futility and inequity of permitting Plaintiffs to continue pursuing it.  Because

9    IPI should not be required to continue defending against Plaintiffs' deficient claim, the Court

10   should dismiss the SAC with prejudice.

## <u>Argument</u>

## I.    THE COURT SHOULD DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT FOR FAILURE TO STATE A PLAUSIBLE CLAIM FOR RELIEF.

13             "To survive a motion to dismiss for failure to state a claim upon which relief can be

14   granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a pleading 'must contain

15   sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its

16   face'.'"  Mem. Dec. at 5 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  Thus, the SAC

17   must allege facts sufficient to push Plaintiffs' claims "across the line from conceivable to

18   plausible," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and raise them "above the

19   speculative level."  *Wang v. Am. Sai Green Corp.*, No. 1:13-cv-00026, 2014 WL 1365740, at *1

20   (D. N. Mar. I. Apr. 4, 2014) (quoting *Iqbal*, 556 U.S. at 678, *Twombly*, 550 U.S. at 555–56)).

21             "While legal conclusions can provide the framework of a complaint, they must be

22   supported by factual allegations."  *Iqbal*, 566 U.S. at 679.  Nor is the Court required to accept as

23   true conclusory statements unsupported by factual allegations.  *Id*. at 663, 678-79.  "Threadbare

24

3

recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" on a motion to dismiss. *Id*. at 678. Accordingly, in assessing the plausibility of a claim, the Court must set aside conclusory allegations and "consider the factual allegations in respondent's complaint to determine if they plausibly suggest an entitlement to relief." *Id*. at 681. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief'," and the Complaint must fail. *Id*. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

As the Court previously stressed to Plaintiffs, "it's Plaintiffs' burden of proof to plausibly allege sufficient facts." (ECF 23 (Tr. of Hearing on IPI's Second Motion to Dismiss) at 40:1-2.) The SAC does not satisfy that burden.

> **A.    Plaintiffs Do Not Allege Facts Supporting the Inference that Taiwanese and Italian Employees Referenced in the Second Amended Complaint Were "Similarly Situated" to Plaintiffs or Purported Class Members.**

Pattern-and-practice claims "must be based on discriminatory conduct that is widespread throughout a company or that is a routine and regular part of the workplace." *Cherosky v. Henderson*, 330 F.3d 1243, 1247 (9th Cir. 2003) (citing *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 336 (1977)). They "cannot be based on 'sporadic discriminatory acts.'" *Id*. (quoting *Teamsters*, 431 U.S. at 336).

Here, Plaintiffs base their pattern-and-practice discrimination claim on their assertion that IPI paid its Turkish workers less than its Italian and Taiwanese workers. (SAC ¶¶ 1, 19.) To show discrimination by comparison to persons outside the class, Plaintiffs must "demonstrate that [they were] similar to [their] proposed comparator[s] 'in all material respects.'" *Sheets v. City of Winslow*, 859 F. App'x. 161, 162 (9th Cir. 2021) (quoting *Moran v. Selig*, 447 F.3d 748, 755 (9th Cir. 2006)). "[I]ndividuals are similarly situated when they have similar jobs and display similar conduct." Mem. Dec. at 9 (quoting *Vasquez v. Cnty. of L.A.*, 349 F.3d 634, 641

4

(9th Cir. 2003); *see also Demekpe v. Cnty. of L.A.*, No. CV 15-6007-DDP (KES), 2015 WL

13237302, at *8 (C.D. Cal. Dec. 8, 2015) ("A Title VII plaintiff must plead facts showing it is

plausible, not merely possible, that other applicants who received favorable treatment were

similarly situated to the plaintiff 'in all material respects.'") (quoting *Moran*, 447 F.3d at 755),

*report and recommendation adopted*, No. CV 15-6007-DDP (KES), 2016 WL 8738111 (C.D.

Cal. July 8, 2016).

Where, as here, Plaintiffs rely on differential treatment from a non-protected group, the

requirement to sufficiently plead similarly situated employees applies both in the context of an

individual claim, *see* Mem. Dec. at 7 (citing *Peterson v. Hewlett-Packard Co.*, 358 F.3d 599, 603

(9th Cir. 2004)), as well as in the context of a purported class action, *see Bartholomew v. Lowe's

Home Centers, LLC*, No.: 2:19-cv-695-FtM-38MRM, 2020 WL 321372, at *6 (M.D. Fla. Jan.

21, 2020); *Werst v. Sarar USA Inc.*, No. 17-CV-2181 (VSB), 2018 U.S. Dist. LEXIS 44124, at

*22-24 (S.D.N.Y. Mar. 16, 2018). Because Plaintiffs do not allege any plausible Italian or

Taiwanese comparators to themselves or other purported class members, their pleading again

fails.[2]

### 1.    Plaintiffs' New Allegations

Seeking to rectify the deficiencies in the First Amended Complaint, Plaintiffs add new

allegations to the SAC and attach declarations from six former IPI workers. However, none of

the foregoing is sufficient to salvage Plaintiffs' deficient pleading.

---

2.  To plead a claim of Title VII disparate treatment, "a plaintiff must allege sufficient facts to
    show that '(1) he is a member of a protected class; (2) he was qualified for his position; (3)
    he experienced an adverse employment action; and (4) similarly situated individuals outside
    his protected class were treated more favorably, or other circumstances surrounding the
    adverse employment action give rise to an inference of discrimination." *Sheets*, 859 F.
    App'x at 162 (quoting *Peterson*, 358 F.3d at 603). IPI's motion relates to the fourth prong,
    because the SAC does not sufficiently plead Taiwanese or Italian comparators.

a)      *Plaintiffs' Insufficiently Supported and Faulty New Theory*

Having failed to provide any specific Italian or Taiwanese comparators on their prior attempts to plead a claim against IPI, Plaintiffs now attempt to altogether avoid that requirement by alleging that, "at IPI there was no difference in pay for H-2B workers by category," and that "[w]ithin each ethnic national team, all the construction workers were paid at the same rate, all foremen were paid at the same rate, and all supervisors were paid at the same rate."  (SAC ¶ 25.) Plaintiffs' new theory cannot help them.

As a threshold matter, the only particularized facts Plaintiffs allege in support of their otherwise conclusory assertion above is a statement from an Australian Project Manager for the Italian crew, Glenn Bell, who states in his declaration that, "[t]he Italian construction workers were paid $25.00 per hour, and the Italian foremen were paid $50.00."  (Bell Decl. ¶ 11; *see also* SAC ¶ 28.)  Plaintiffs allege no particularized facts for the Court to infer that all Taiwanese construction workers and all Taiwanese forepersons were paid at the same wage-rates.  The only wage rate Plaintiffs note for a Taiwanese worker is $23 per hour, (*see, e.g.,* SAC Ex. 1A (EEOC Charge)), but Plaintiffs do not allege whether this Taiwanese worker was a construction worker, foreperson or supervisor, what type of work he or she performed, or what the wage-rates were for other Taiwanese workers.  Similarly, Plaintiffs allege no facts from which the Court can infer that all supervisors of the same national origin were paid the same wage rate.[3]  Plaintiffs do not even allege facts to support an inference that all Turkish construction workers and all Turkish

---

3.  The SAC and its accompanying declaration from Turkish Supervisor Senol Barut appear to contain a vague admission that there was at least one other supervisor who had the same or lower wage rate than Mr. Barut.  (*See* SAC ¶ 53 ("When the Turks got their first paycheck, Barut was surprised to learn that all but one person on the management team, as he was, were paid much more than he.").)  Plaintiffs provide the Court no further information regarding this other supervisor.

6

supervisors were paid the same wage rate.  However, even if Plaintiffs alleged this missing

information, their new theory cannot help them circumvent the need to plead specific

comparators.

Plaintiffs' own pleading demonstrates that broadly comparing groups of construction

workers, forepersons and supervisors among the Turkish workers on the one hand, and Italian

and Taiwanese workers on the other hand, is not an apples-to-apples comparison because of the

variations among these groups and across different trades.

The SAC shows that teams of different national origin did not necessarily include the

same trades, roles and specialties.  Plaintiffs allege in the SAC and through three separate

declarations that "only the Turks had electricians and plumbers," while teams of other national

origin did not.  (SAC ¶ 34 (citing Guzzardi Decl. at 2); *also* Genç Decl. ¶ 7 ("The Italians, who

were assigned the fourteenth floor, did not have electricians or plumbers"); Oztuna Decl. ¶ 7 ("in

2020 there was no electrical and mechanical . . . team other than Turks at the construction site").)

Plaintiffs also allege that, while Turkish workers performed MEP work on all floors, (SAC ¶¶

34, 60), the Italians "were sent to other floors for aluminum curtain wall installation" (Genç

Decl. ¶ 6; *see also* SAC ¶ 60), and "Taiwanese workers worked on all floors as needed" (Genç

Decl. ¶ 8).  Plaintiffs' pleading also demonstrates variation across trades and specialties.  (*See,*

*e.g.*, SAC ¶ 44 (referring to "special welding activities on MEP work"); *id* ¶¶ 45, 47, 59

(describing different carpentry workers and specializations including a "mechanical fitter,"

"mechanical installer," "drywall system installation," "aluminum curtain wall installation" and

"ceiling carpentry").  Plaintiffs' pleading also demonstrates differences in the conditions of

employment for teams of different national origin.  Turkish workers were permitted to perform

overtime work and earn overtime pay, while Italian workers were not.  (*See* SAC ¶¶ 45, 49; Bell

7

Decl. ¶ 12.)  Turkish workers also had a third-party recruitment agency acting as their representative that liaised for them with IPI's management.  (*See* Oztuna Decl. ¶¶ 4, 14-15; *see also* Barut Decl. at 1.)  Plaintiffs' pleading is silent on whether Italian and Taiwanese workers had similar representatives available to them.  Plaintiffs' pleading also contains no particularized facts regarding the qualifications and experience across teams of different national origin.

It is insufficient for Plaintiffs and their declarants to allege generally that the nature of the work that "Turks" performed, and the skill that work required, is the "same" as, or "no different" from, the work and the skill of "Italians" and "Taiwanese" workers.  (*See, e.g.*, SAC ¶ 30 ("In Bell's opinion, 'no difference [i]n skill level, workmanship, or the nature and scope of the work accounts for the disparity in pay rates between the Turks and the Italians.'"); SAC ¶ 31 ("Bell saw no difference in the skill level, workmanship, or nature and scope of work performed by the Turks and the Taiwanese."); SAC ¶ 36 ("Guzzardi saw the work that the Turks did and 'noticed that their skills are the same as mine and ours' – i.e., as the Italian team's."); Oztuna Decl. ¶ 11 ("In my professional opinion, no difference in skills or the nature of the work can account for the disparity in wage rates between the Turks and the Italian and Taiwanese workers.")).  The Court has no factual basis to infer who these "Turks," "Italians" and "Taiwanese" workers were and whether they are comparable.  This is no different from Plaintiffs generically referring to Italian and Taiwanese "workers" in the First Amended Complaint, which the Court has already held insufficient.  *See* Mem. Dec. at 10 ("[T]he term 'workers' is too broad to conclude that they have similar jobs as [a purported Turkish class member] such that they are similarly situated individuals.").  Likewise, it is insufficient for Plaintiffs to allege that some of their declarants observed the paychecks of some "Taiwanese and Italians" (*see, e.g.*, SAC ¶¶ 54, 55; Oztuna Decl. ¶ 12; Barut Decl. at 1), without alleging facts for the Court to determine whether those

individuals were similarly situated to any Plaintiff or purported class member.  Thus, Plaintiffs'

new theory, and their generalized allegations based on that theory, do not provide them a basis to

avoid identifying specific comparators.[4]

       Plaintiffs' generalized allegations regarding the alleged sameness of the work and skills

of the "Turks," "Italians" and "Taiwanese" (SAC ¶ 30, 31, 42, 43) suffers from another flaw as

well.  In making these and similar broad assertions, Plaintiffs rely heavily on certain declarations

of former IPI workers, which contain marked inconsistencies.  In particular:

- Mr. Bell (Australian Project Manager for the Italian team) states that the "nature and quality of the work that the Turks did was comparable to the nature and quality of the work the Italians did … across skills, whether it be comparing *electricians to electricians*, welders to welders, masons to masons, etc.";

- Mr. Fiden Hamo (Saipanese member of a cleanup crew) asserts that, "[t]here was no difference that [he] could see in the work that Turkish construction workers doing welding, masonry, carpentry, and *electrical work* were doing, as opposed to work that welders, masons, carpenters, and *electricians* from other nations were doing;" and

- Mr. Oztuna (Turkish Supervisor) expresses the "opinion" that "[a]cross specialties – masonry, *plumbing*, dry wall, *electrical*, welding – I observed no difference in the skill level of workers according to nationality, and no difference in the difficulty of the work they were doing on various floors of the building."

(Bell Decl. ¶¶ 9-10; Hamo Decl. ¶ 11; Oztuna Decl. ¶¶ 10-11 (emphasis added).)  However,

these statements ring hollow.  When Plaintiffs repeatedly allege in the SAC that *only the Turkish*

*team had electricians and plumbers* (*see supra* at 7), Messrs. Bell, Hamo and Oztuna cannot

credibly compare the "nature," "quality" and "skill level" of Turkish electricians and plumbers

---

4. Plaintiffs' allegation that "'[t]he applications on all floors' – Turkish, Italian, and Taiwanese – 'were based on the same plan and the same productions'" (SAC ¶ 52 (citing Barut Decl. at 1)) does not help their new theory either.  Even if the Court credits this conclusory assertion, it does not support the inference Plaintiffs want the Court to derive, *i.e.*, that the Turkish, Italian and Taiwanese crews must plausibly have had construction workers, forepersons and supervisors of the same trades, skills, qualifications and experience.  As discussed above, that is not the case.  (*See supra* at 7-9.)

on the one hand, and Taiwanese and Italian electricians and plumbers on the other hand.  This

inconsistency—whether deriving from confusion or laxity—in Plaintiffs' pleading raises serious

questions about which workers these and other declarants actually observed, and how carefully

they observed them.  It also undermines the reliability of their statements and the allegations in

the SAC relying on those statements.  (*See, e.g.*, SAC ¶¶ 30, 31, 42, 43.)[5]  Ultimately, the

inconsistencies in Plaintiffs' pleading underscore the need for the Court to hold Plaintiffs to their

burden of sufficiently pleading specific comparators.  Plaintiffs have consistently failed to do so.

### b) No Plausible Comparators

Plaintiffs' new allegations and declarations do not provide the Court any specific,

plausibly pleaded comparators for the named Plaintiffs, much less for other purported class

members.  Plaintiff Hasan Gökçe was a "plumbing foreman" (SAC ¶ 6) and Plaintiff Süleyman

Köş an "electrician" and then "electrical foreman" (*id.* ¶ 7).  Based on Plaintiffs' own allegation

that "only the Turks had electricians and plumbers" (*id.* ¶ 34), Plaintiffs cannot allege any

similarly situated comparators for Plaintiffs Gökçe and Köş.  Nor do they sufficiently plead a

comparator for Plaintiff Genç.

According to the SAC, Mr. Genç's title on IPI's Certificate of Employment was

"Construction Carpenter," and he was "foreman and the leader of the welding and drywall team."

(*Id.* ¶ 5.)  Plaintiffs identify no Taiwanese or Italian foreperson, much less a Taiwanese or Italian

foreperson of a welding and drywall team.  The only other "carpenter" Plaintiffs identify is the

---

5. Although the Court must generally accept factual allegations in the SAC as true at this motion-to-dismiss stage, "the Court need not accept inconsistent allegations in [the] [C]omplaint as true" or attempt to "reconcile" them.  *Sacco v. Mouseflow, Inc.*, No. 220CV02330TLNKJN, 2022 WL 4663361, at *2 (E.D. Cal. Sept. 30, 2022) (omitting citations).  The Court is also not required to accept as true "unwarranted deductions of fact, or unreasonable inferences."  *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

Italian worker Mr. Guzzardi, who worked on drywall/partition wall installations on the 14th floor.  (*Id*. ¶ 32.)  Plaintiffs do not allege that Mr. Guzzardi was a construction worker or a foreman.  Even if the former, it does not help Plaintiffs on this motion to dismiss.  That Mr. Guzzardi was possibly a "construction worker" in one team of carpenters and Mr. Genç a foreman of another team of carpenters is insufficient to infer they were similarly situated.  *See Raby v. Westside Transit*, No. Civ.A. 03-1000, 2006 WL 1877000, at *2 (E.D. La. June 16, 2006) (plaintiff's assertion in a gender discrimination Title VII case that she was paid less than a male subordinate was insufficient to sustain a *prima facie* case where there was no evidence that plaintiff actually supervised the alleged subordinate and no evidence of his duties), *aff'd*, 224 F. App'x 384 (5th Cir. 2007).[6]  Here, there is no allegation that Mr. Genç supervised Mr. Guzzardi; while Plaintiffs allege that Mr. Genç has a certification in carpentry and more than 20 years' experience in general construction, (Genç Decl. ¶ 2), they allege no facts regarding Mr. Guzzardi's qualifications and experience, nor the qualifications and experience of the Turkish carpenters Mr. Genç was supervising; in addition, as discussed above, there were differences in the conditions of employment of Mr. Genç and Mr. Guzzardi (*see supra* at 8).[7]  Therefore,

---

6. Although *Raby* is a decision on a motion for summary judgment, it is relevant here.  As the Court previously noted, "district courts in the Ninth Circuit look to the elements of a *prima facie* case in analyzing the sufficiency of an employment discrimination complaint."  Mem. Dec. at 7; *see also Sablan v. A.B. Won Pat Int'l Airport Auth.*, No. 10-00013, 2010 U.S. Dist. LEXIS 130692, at *13, 2010 WL 5148202, at *5 (D. Guam Dec. 9, 2010) (citations omitted) ("[C]ourts are now looking to those elements to analyze a motion to dismiss—so as to decide, in the light of 'judicial experience and common sense,' whether the challenged complaint 'contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'").

7. Mr. Guzzardi states in his declaration that "[he] saw that [the 'Turks''] work is the same as what we do," that "[he] noticed that their skills are the same as mine and ours … but I don't understand why they get paid less than the Italian team."  (Guzzardi Decl. at 2.)  Mr. Guzzardi's conclusory statements lack any factual basis.  He does not allege which Turkish workers he was observing—were these the Turkish MEP workers who worked on the 14th

Plaintiffs do not provide the Court sufficient particularized facts to reasonably infer that Mr. Genç and Mr. Guzzardi are similarly situated.  In conducting a similarly situated assessment at the motion-to-dismiss stage, courts with significantly more facts have found them lacking.  *See, e.g.*, *Stern v. State Univ. of N.Y.*, No. 16-CV-5588 (NGG) (LB), 2018 U.S. Dist. LEXIS 173054, at *29-30 (E.D.N.Y. Sept. 30, 2018) (a Title VII plaintiff may not "rest on broad generalizations drawn from job titles, classifications, or divisions," but "must make specific allegations regarding the actual job duties performed by the plaintiff and similarly situated employees;" finding that plaintiff failed to "specify any job duties of the [alleged] male comparator except that he, like [her], works in the [same department] and is responsible for supporting the Eagle mainframe system"); *Grigorescu v. Bd. of Trustees of the San Mateo Cnty. Cmty. Coll. Dist.*, No. 18-cv-05932-EMC, 2019 WL 1790472, at *11 (N.D. Cal. Apr. 24, 2019) (granting motion to dismiss because plaintiff "alleged no facts that demonstrate that the [male] candidate who replaced her was in fact similarly situated—*e.g.*, had similar qualifications and experience."); *Dixon v. Haw. Dep't of Educ.*, CV. NO. 16-00110 DKW-KJM, 2018 WL 2207126, at *12 (D. Haw. May 14, 2018) (citations omitted) (plaintiff failed to state a claim of race-based disparate treatment:  other than alleging that she and her allege male comparator shared the same job title of "counselor," she did not allege "facts" to allow the court to conduct a "meaningful comparison"), *aff'd sub nom. Dixon v. Dep't of Educ.*, 783 F. App'x 787 (9th Cir. 2019).  Other

floor with the Italian crew, and who have no Italian MEP counterparts?—whether he knew anything about their qualifications and experience; whether they were his counterparts in terms of other conditions of employment; and what his basis was for assessing the similarity of his work with the work they performed.  *See Bess v. Adams & Assocs., Inc.*, No. 2:17-cv-00173-TLN-KJN, 2018 WL 4801951, at *5 (E.D. Cal. Oct. 3, 2018) ("[p]laintiff's statement that he is 'aware' another employee was 'similarly situated'" was insufficient on a motion to dismiss because it "is not a factual allegation, it is speculation and conclusion.")

than Mr. Guzzardi, Plaintiffs do not specifically identify a single other Taiwanese or Italian worker.

### 2.      Plaintiffs' Reprised Allegations

Plaintiffs' remaining allegations in the SAC are either identical or similar to allegations from their prior pleadings that the Court previously found insufficient.  Plaintiffs' conclusory statements that, "IPI employed [the] Taiwanese and Italian workers to perform the same types of work that Plaintiffs and members of the class performed" (SAC ¶ 17); that, "[w]ith respect to the types of work they performed, those Taiwanese and Italian workers had the same or similar level of skills, qualifications, and experience as Plaintiffs and members of the class" (SAC ¶ 18); and that certain Turkish workers "saw" that Italian and Taiwanese workers were paid more for the "same work" (*id.* ¶¶ 45-50, 54) are insufficient.  Courts consistently reject similar conclusory allegations on motions to dismiss disparate treatment claims.  *See, e.g.*, *Renati v. Wal-Mart Stores, Inc.*, No. 19-cv-02525-CRB, 2019 WL 5536206, at *6 (N.D. Cal. Oct. 25, 2019) (citing *Iqbal*, 556 U.S. at 677-78) (dismissing Title VII pay discrimination case because plaintiff's conclusory allegation that she was paid less than "similarly situated men" was "insufficient to state a claim for [pay discrimination] plausible on its face."); *Barrett v. Kaiser Found. Health Plan of the Nw.*, No. 3:14-cv-020160-SI, 2015 WL 1491037, at *3 (D. Or. Apr. 1, 2015) (allegation that a non-African American employee was "similarly situated" to Plaintiff was "no more than a legal conclusion").

### B.      Plaintiffs Allege No Other Factual Basis to Support Their Claim of Pattern-and-Practice Discrimination.

Because Plaintiffs do not allege a single instance of wage discrimination of Turkish workers that involves a plausible, well-pleaded comparator, Plaintiffs cannot support their

13

pattern-and-practice discrimination claim through anecdotal instances of alleged discrimination.[8]

Nor do Plaintiffs allege any other facts in the SAC for the Court to infer that IPI had a policy of

discriminating against its Turkish workers.  Plaintiffs allege that IPI "never had a system for

setting wage rates for construction workers based on objective criteria."  (SAC ¶ 64.)  However,

this is a conclusory assertion that cannot support a plausible inference that, as a result, IPI

engaged in a pattern-and-practice of unlawful wage discrimination against employees of Turkish

origin.  To the contrary, the Court could also reasonably infer from that allegation that there was

no "company-wide" policy of discrimination against workers of Turkish origin.

### C.   Plaintiffs Do Not State a Claim for Individual Relief Either

As demonstrated above, Plaintiffs did not sufficiently plead a pattern-and-practice claim

of discrimination against IPI.  The named Plaintiffs do not sufficiently plead their individual

claims of discrimination either.  The SAC does not identify a plausible comparator for any of the

three named Plaintiffs; rather, Plaintiffs' allegations make evident that they cannot identify any

comparators for Mr. Gökçe (an electrician and electrical foreman) and Mr. Köş (a plumbing

foreman).  (*See supra* at 10 (discussing the inevitable lack of comparators for Messrs. Gökçe and

Köş because there were no Italian and Taiwanese electricians and plumbers); *see also supra* at

---

8.  *See Krish v. Conn. Ear, Nose & Throat, Sinus & Allergy Specialists, P.C.*, 607 F. Supp. 2d
324, 332 (D. Conn. 2009) (three "confirmatory instances" of alleged discrimination
insufficient on a motion to dismiss an age-discrimination pattern-and-practice claim);
*Rubinow v. Ingelheim*, No. 3:08-cv-1697 (VLB), 2010 WL 1882320, at *4 (D. Conn. May
10, 2010) (granting motion to dismiss because six alleged instances of age discrimination
were insufficient to plead a pattern-and-practice claim); *United States v. Nobel Learning
Cmtys, Inc.*, 676 F. Supp. 2d 379, 384 (E.D. Pa. 2009) (plaintiff sufficiently alleged a pattern-
and-practice of discrimination at the pre-school level where the complaint contained eleven
instances of discrimination; plaintiff did not sufficiently allege a pattern-and-practice of
discrimination at other school levels where the complaint alleged a single instance of
discrimination); *see also* ECF 23 (during oral argument on IPI's first motion to dismiss,
Plaintiffs' counsel conceded to the Court that "a pattern means more than one").)

14

11-13 (discussing Plaintiffs' failure to sufficiently allege a comparator for Mr. Genç).)  As

Plaintiffs' counsel conceded during oral argument on IPI's Motion to Dismiss the First Amended

Complaint, "the named plaintiffs" should be "the principal example that shows the presence of

the claim first."  (ECF 37 at 19:9-13.)  Even after three attempts, the three named Plaintiffs fail

that test.[9]

\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Plaintiffs fail to state a claim of an unlawful pattern-and-practice of discrimination

against IPI.  They also fail to state individual claims of discrimination for the three named

Plaintiffs.  Thus, the Court should dismiss Plaintiffs' individual claims, as well as their purported

class action.  *See Young v. AmeriGas Propane, Inc.*, No. 14-cv-00583-BAS (RBB), 2014 WL

5092878, at \*5 (S.D. Cal. Oct. 9, 2014) (class action could not stand where the named plaintiff's

case was dismissed).

## II.   THE COURT SHOULD DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT WITH PREJUDICE

Although the Ninth Circuit has a "liberal policy favoring amendments," Mem. Dec. at 13

(quoting *Johnson v. Winco Foods, LLC*, No. ED CV 17-2288-DOC (SHKx), 2018 WL 6017012,

at \*9 (C.D. Cal. Apr. 2, 2018)), dismissal with prejudice is warranted where there is "'undue

delay, bad faith or dilatory motive on the part of the movant [for leave to amend], repeated

failure to cure deficiencies by amendments previously allowed, undue prejudice to the [] party

[opposing leave to amend], [or] of futility of the amendment.'"  Mem. Dec. at 14 (quoting *Dog

Bites Back, LLC v. JPMorgan Chase Bank, N.A.*, 563 F. Supp. 3d 1120, 1123 (D. Nev. 2021)).

---

9.   Although not the subject of the present phase of the proceedings, IPI notes that, if Plaintiffs'
claim were to proceed to class certification, the inevitable lack of comparators for Messrs.
Gökçe and Köş also makes them inadequate class representatives pursuant to Fed. R. Civ. P.
23(a)(3).

Here, dismissal of the SAC with prejudice is warranted because the Court granted Plaintiffs two previous opportunities to amend, yet Plaintiffs still fail to cure the very deficiency the Court found fatal in Plaintiffs' Original and First Amended Complaints:  *i.e.*, the failure to plead plausible comparators.

In granting IPI's first motion to dismiss, the Court specifically instructed Plaintiffs to allege "particularized" facts about their alleged comparators so that the Court could reasonably infer whether Plaintiffs are comparing "apples and apples as opposed to apples and oranges." (*See* ECF 23 at 14:9-13.)  Despite the Court affording Plaintiffs more than two months to amend—including an extension to which IPI agreed— Plaintiffs did not do so.

In granting IPI's second motion to dismiss, the Court again provided Plaintiffs a detailed roadmap of what they needed to amend in their pleading.  Specifically, the Court instructed Plaintiffs that it is "looking [for] details of similar position as well as similar conduct," and that it must be able to infer that Plaintiffs' comparators "were in [a] particular area of work that could be at least plausibly similarly situated [to Plaintiffs] in the similarity of the conduct that they were doing, as well as similarity of the position or title or trade that they held."  (ECF 37 at 27:6-11, 38:3-10.)  The Court specifically inquired of Plaintiffs' counsel whether Plaintiffs required more time than the 14 days permitted under the Federal Rules of Civil Procedure to amend their pleading, and granted them one month to do so.  (*Id*. at 42:2-9.)

Yet absent again from the SAC is a single plausibly pleaded comparator, much less a sufficient number of plausibly pleaded comparators to sustain Plaintiffs' pattern-and-practice claim.  The Court should therefore dismiss Plaintiffs' pleading with prejudice.  *See Sheets*, 859 F. App'x at 163 (affirming dismissal with prejudice of second amended complaint where plaintiff "did not provide more details between the FAC and SAC regarding whether [Plaintiff]

and [his alleged comparator] were 'similarly situated' other than identifying his proposed white

comparator by name and noting that [he] was also an officer," although in dismissing the FAC,

the district court had "explained the applicable legal framework for plausibly alleging a race-

based disparate treatment claim under Title VII."); *Loos v. Immersion Corp.*, 762 F.3d 880, 890

(9th Cir. 2014) (district court did not abuse its discretion in dismissing with prejudice plaintiff's

first amended complaint because, despite the court's "detailed explanation" of why plaintiff's

original complaint was deficient, "Plaintiff failed to correct the deficiencies identified in his

original complaint.").

The Court has afforded Plaintiffs ample opportunities to amend their pleading and

extensive instruction on how to amend.  Accordingly, it should exercise its discretion and

dismiss the SAC with prejudice, and not subject IPI to continue defending a deficient claim.  As

in *Sheets*, "[g]iven [Plaintiffs'] numerous opportunities to provide the necessary factual

allegations to support [their] disparate treatment theory, the district court [will not] abuse its

discretion by denying [Plaintiffs] a third opportunity to amend."  *Sheets*, 859 F. App'x at 163.

## Conclusion

For the reasons set forth above, IPI respectfully requests that the Court dismiss Plaintiffs'

Second Amended Complaint with prejudice.

Dated:  November 18, 2022                    Respectfully Submitted,


                                             */s/ Amina Hassan*
                                             Daniel H. Weiner (admitted *pro hac vice*)
                                             Amina Hassan (admitted *pro hac vice*)
                                             Eleanor Erney (admitted *pro hac vice*)
                                             HUGHES HUBBARD & REED LLP
                                             One Battery Park Plaza
                                             New York, NY 10004-1482
                                             Tel.: (212) 837-6000
                                             Fax: (212) 422-4726
                                             daniel.weiner@hugheshubbard.com
                                             amina.hassan@hugheshubbard.com
                                             eleanor.erney@hugheshubbard.com

                                             Joey P. San Nicolas
                                             SAN NICOLAS LAW OFFICE, LLC
                                             2nd Fl, ICC, Room 203
                                             Gualo Rai, Saipan
                                             Telephone: (670) 234-7659
                                             jpsn@sannicolaslaw.net

                                             *Attorneys for Defendant Imperial Pacific*
                                             *International (CNMI), LLC*

18

Joey P. San Nicolas
SAN NICOLAS LAW OFFICE, LLC
2nd Fl, ICC, Room 203
Gualo Rai, Saipan
Telephone: (670) 234-7659
Email: jpsn@sannicolaslaw.net

Daniel H. Weiner (admitted *pro hac vice*)
Amina Hassan (admitted *pro hac vice*)
Eleanor Erney (admitted *pro hac vice*)
HUGHES HUBBARD & REED LLP
One Battery Park Plaza
New York, NY 10004-1482
Tel.: (212) 837-6000
Fax: (212) 422-4726
daniel.weiner@hugheshubbard.com
amina.hassan@hugheshubbard.com
eleanor.erney@hugheshubbard.com

*Attorneys for Defendant Imperial Pacific International (CNMI), LLC*

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN MARIANA ISLANDS

| | |
|---|---|
| ÖZCAN GENÇ, HASAN GÖKÇE, and SÜLEYMAN KÖŞ, on behalf of themselves and all other persons similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>IMPERIAL PACIFIC INTERNATIONAL (CNMI), LLC, and IMPERIAL PACIFIC INTERNATIONAL HOLDINGS LTD.<br><br>Defendants. | Civil Case No. 1:22-cv-00002<br><br>**CERTIFICATE OF SERVICE** |

I hereby certify that, on November 18, 2022 (ChST), I electronically filed the foregoing

with the Clerk of Court for the United States District Court for the Northern Mariana Islands

1

using the CM/ECF system.  A true and correct copy of this motion has been served via the

Court's CM/ECF system on all counsel of record.

/s/ Amina Hassan
Amina Hassan
