**Richard C. Miller, F0458**
**BANES HOREY BERMAN & MILLER, LLC**
**Suite 201, Marianas Business Plaza**
**P.O. Box 501969**
**Saipan, MP 96950**
**Tel.: (670) 234-5684**
**Fax: (670) 234-5683**
**Email: RMiller@pacificlawyers.law**
*Attorneys for Plaintiffs*

**IN THE DISTRICT COURT**
**FOR THE NORTHERN MARIANA ISLANDS**

| | |
|---|---|
| ÖZCAN GENÇ, HASAN GÖKÇE, and SÜLEYMAN KÖŞ, on behalf of themselves and all other persons similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>IMPERIAL PACIFIC INTERNATIONAL (CNMI), LLC, and IMPERIAL PACIFIC INTERNATIONAL HOLDINGS LTD.,<br><br>Defendants. | CASE NO. 22-CV-00002<br><br>PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS SECOND AMENDED COMPLAINT WITH PREJUDICE |

Plaintiffs' Second Amended Complaint ("SAC") pleads sufficient facts to show that across the board, Turkish workers, foremen, and supervisors, all brought to work in Saipan on H-2B visas by Defendants on construction of the Imperial Palace hotel, were paid substantially less than their Italian and Taiwanese counterparts doing similarly situated work. These Turkish H-2Bs[1] were similar in all *material* respects to their counterparts – comparing construction workers to construction workers, foremen to foremen, supervisors to supervisors. Distinctions between one specialty and another are not material, because all Turkish construction workers

---

[1] To avoid confusion, IPI employees under the H-2B visa program will be referred to as "H-2Bs," reserving the term "workers" to mean construction workers.

1

were paid the same minimum wage. Imperial Pacific International (CNMI), LLC ("IPI") did not distinguish one construction specialty from another, and neither must or should the Court in making comparisons to H-2Bs of other nationalities. Plaintiffs have attended to the Court's concerns, as noted in its Memorandum Decision dismissing the first amended complaint (ECF No. 34, Oct. 14, 2022) and added factual details which, taken as true, show that Turkish H-2Bs – construction workers, foremen, and supervisors – were systematically paid substantially less than Italian and Taiwanese H-2Bs for the same work. The SAC adequately and plausibly shows that IPI's standard operating procedure was to systematically discriminate against Turkish H-2Bs as a class – the proper inquiry in a discriminatory treatment class action.

Here is a summary of the substantive additions in the SAC:

- Turkish construction workers were paid less than the lowest wage within the basic wage rate range for all categories of H-2B workers approved for IPI, according to U.S. Department of Labor ("USDOL) statistics. (SAC ¶¶ 20–23)

- Within each category, the basic wage range typically differed by only a factor of 1.5, whereas Italian and Taiwanese comparators were paid three times as much as Turkish H-2Bs. (SAC ¶ 24)

- Actually, IPI did not differentiate pay scales for construction workers by specialty, and all constructions workers within a given national "team" were paid at the same rate. (SAC ¶ 25)

- Glenn Bell, project manager for the Italian team, states that the Italian construction workers were paid $25.00 per hour without any distinction in pay between specialties, and that foremen were paid $50.00 per hour; that Turkish H-2Bs were paid about one-third those rates (SAC ¶¶ 26–30) although there was no difference in in skill level,

2

workmanship, or nature or scope of work. Neither did he observe any such differences between the Turks and the Taiwanese. (SAC ¶ 31)

- Antonio Guzzardi, a Turkish carpenter, observed that Turks doing mechanical/electrical/plumbing ("MEP") installations on the 14th floor, which was assigned to the Italians, had the same skill level as the Italians; that he is aware of wage differences between Italian and Turkish construction workers, foremen, and supervisors and does not see a reason for it. (SAC ¶¶ 32–38).

- Fiden Hamo, a local worker, helped out crews of various nationalities, including the Turks, Italians, and Taiwanese, and he observed no differences in the work the crews were performing. (SAC ¶¶ 39–43). Photographs (Ex. 7B) show how closely local workers like Hamo worked with H-2Bs in construction of the hotel.

- A Taiwanese welder observed Turkish and Italian welders at work and noted that their skills were, if anything, greater and more specialized than those of the Taiwanese welders. (SAC ¶¶ 44).[2]

- Turkish supervisor Senol Barut was on the management team and observed that almost all others on that team were paid much more than he, and that Italian and Taiwanese supervisors and workers were paid more than the Turks. (SAC ¶¶ 53, 55).

- Fuat Mert Oztuna, another Turkish supervisor, discussed the disparity in wages with Italian supervisor Corrado Modica, and Modica was surprised by the disparity; he also raised the issue with representatives of IPI and IDS (the Turkish recruiting firm) and was told IPI would not do anything about it. (SAC ¶¶ 56, 57)

---

[2] Plaintiffs are now in possession of a signed declaration by this Taiwanese welder, which details the type of work he was doing and the basis of his knowledge of the pay differential.

3

- Ozcan Genc, a general foreman of the Turkish crew, directly observed the work of Italians on the 14th floor because Turkish welders and carpenters were asked to assist the Italians in installations and MEP work there and on other floors. He also was tasked with checking the quality of work by Taiwanese workers and conformity with construction drawings. He observed that this work by Taiwanese and Italian H-2Bs was no different from the work the Turks were doing and required no greater skill. (SAC ¶¶ 58–62)

Plaintiffs have alleged plausible comparators at the level of construction workers, foremen, and supervisors. "[I]ndividuals are similarly situated when they have similar jobs and display similar conduct." *Vasquez v. Cnty. Of L.A.,* 349 F.3d 634, 641 (9th Cir. 2003). The similarity to proposed comparators must be "in all material respects." *Moran v. Selig,* 447 F.3d 748, 755 (9th Cir. 2006). This test is not "so narrowly construed" as to require comparison between plaintiff and other employees "in every single aspect of their employment[.]" *Ercegovich v. Goodyear Tire & Rubber Co.,* 154 F.3d 344, 352 (6th Cir. 1998). "What constitutes 'all material respects' ... varies somewhat from case to case ... in other words, there should be an objectively identifiable basis for comparability." *Graham v. Long Island R.R.,* 230 F.3d 34, 40 (2d Cir. 2000). The "similarly situated" inquiry is "a flexible, common-sense one that asks, at bottom, whether 'there are enough common factors ... to allow a meaningful comparison in order to divine whether intentional discrimination was at play.'" *Henry v. Jones,* 507 F.3d 558, 564 (7th Cir. 2007) (quoting *Barricks v. Eli Lilly and Co.,* 481 F.3d 556, 560 (7th Cir. 2007). In a pay discrimination claim, "[t]he complaint is not required to identify any comparators who have received more favorable treatment than plaintiff." *Houle v. Walmart Inc.,* 447 F. Supp. 3d 261, 280 (M.D. Pa. 2020).

Because all IPI construction workers within each national "team" were paid at the same rate, whether a particular worker was an electrician or a welder or a carpenter is immaterial and irrelevant. Construction specialties made no difference to IPI and should not make a difference in this analysis. The "relevant aspects" of the employment of the Turks' employment situation were "nearly identical" to those of the comparators' situation. *Ercegovich*, 154 F.3d at 352 (original emphasis). The objectively identifiable basis for comparison put forth in the SAC is construction worker to construction worker, foreman to foreman, supervisor to supervisor. It is not material, for example, that the Italian team did not include an MEP crew, for, as Mr. Bell states, all Italian construction workers, without distinction among specialties, were paid $25 per hour (Ex. 4 ¶ 11). The SAC alleges that there was one pay rate for Italians and Taiwanese, and another, much lower rate for Turkish H2-Bs. The material, relevant unit of comparison is the group, not the individual, because within each group – construction workers, foremen, supervisors – the pay was the same for all individuals of the same nationality. Contrary to IPI's contention (Mot. 14), broad comparisons such as these are the *only* relevant and material ones.

On this point, the *Moran* case is instructive. Plantiffs/appellants were retired Major League Baseball ("MLB") players, predominantly Caucasian, who brought a class action for discrimination, on grounds that MLB excluded them from benefit plans provided to former Negro League players. In analyzing whether former Negro League players were similarly situated to plaintiffs, the Ninth Circuit did not focus on the circumstances of individual players, their skill levels, positions on the field, or achievements. It compared the "two groups[.]" *Moran,* 447 F.3d at 755. In ultimately determining that they were not similarly situated, the court attended to the material *group* characteristic: that plaintiffs/appellants "were never prevented from playing for an MLB team, and thus unable to acquire the necessary longevity" to

5

vest in the plans. *Id.* Similarly, in the case at bar – where Plaintiffs have plausibly alleged, through the consistent statements of many different first-hand observers, that there were no gradations in pay scale based on skill level or specialty, and no material differences in the work – the proper analysis must be directed at whether the *groups* are similar in all material respects.

IPI erroneously asserts that the requirement to point to specific comparators applies not only to individual claims but also "in the context of a purported class action" (Mot. 12). That is not what the cases it cites say. In *Bartholomew v. Lowe's Home Centers, LLC,* the district court applied a different test in the class context than in the nonclass context. *Bartholomew,* Case No. 2:19-cv-695, 2020 WL 321372, at *5 (M.D. Fla. Jan. 21, 2020). In the context of a class action, the test is whether the class has "demonstrate[ed] that 'discrimination was the company's standard operating procedure—the regular rather than the unusual practice.'" *Id.* quoting *Cooper v. Fed. Reserve Bank of Richmond,* 467 U.S. 867, 876 & n.9 (1984)). Statistical evidence coupled with "anecdotal evidence of the employer's intent to treat the protected class unequally" will suffice. *Id.* Only after determining that the class claim could not meet this regular-practice test did the Court apply the comparators test to see if the individual claims could be salvaged. *Id.* Likewise in *Werst v. Sarar USA Inc.,* the district court applied the comparators test only to an individual claim of sex discrimination under the Equal Pay Act by Amber Werst, one of four named plaintiffs, not to the class claims (primarily under the FLSA and state labor laws). *Werst,* No. 17-CV-2181, 2018 WL 1399343, at *8 (S.D.N.Y. Mar. 16, 2018).

The class test that the Middle District of Florida applied in *Bartholomew* is the test in the Ninth Circuit. In a discriminatory treatment class action, plaintiffs must show that the alleged discrimination "was defendant's 'standard operating procedure' maintained through systematic intentional discrimination." *Penk v. Or. State Bd. of Higher Educ.,* 816 F.2d 458, 463 (9th Cir.

6

1987). Prima facie evidence of discriminatory intent may be statistical, nonstatistical, and anecdotal. *Id.* A prima facie case of disparate treatment may be established by "a combination of direct, circumstantial and statistical evidence of discrimination." *Gay v. Waiters' and Dairy Lunchmen's Union, Local No. 30,* 694 F.2d 531, 533 (9th Cir. 1982).

The strong circumstantial and anecdotal evidence Plaintiffs proffer in the SAC makes out a prima face case of IPI's intentional discrimination against the Turkish team. The declarations of Turks and non-Turks are consistent on the point that Turkish H-2Bs were paid substantially less than H-2Bs recruited from Italy and Taiwan. The statistics on IPI H-2B approvals by USDOL (SAC ¶¶ 20–23) show that the basic wage rate for any of the approved categories never was larger than a factor of 2 (e.g., construction carpenter: $15.48–$28.95) and typically was closer to a factor of 1.5 (e.g., mason: $14.92–$22.00). Yet IPI paid its Italian and Taiwanese H-2Bs three times the rate it paid Turkish H-2Bs. In determining whether a claim is plausible, the reviewing court is directed to "draw on its judicial experience and common sense." *Ashcroft v. Iqbal,* 556 U.S. 662, 679 (2009). The only implausible claim is not Plaintiffs', but IPI's: it is not plausible that IPI routinely paid its Turkish H-2B workers, foremen, and supervisors a third of the wage it paid Italian and Taiwanese H-2Bs because the Turks, to a man, were so much less skilled and experienced; and that IPI entrusted construction of five floors of its luxury hotel to a team that was not worth more than a third of what it was paying H-2Bs assigned to other floors.

IPI is incorrect when it asserts (Mot. 15) that the SAC contains no "particularized facts" regarding qualifications and experience. In his declaration, attached to the SAC as Exhibit 9 (ECF No. 35-7), Plaintiff Ozcan Genc states that he is certified in "metal work, gypsum board drywall system and carpentry, and more than 20 years' experience in general construction" (Ex.

7

9 ¶ 2). He further declares that IPI found the Turkish team's work on the 9th through 13th floors of the hotel to be "of superior quality" and therefore asked the Turks to support the Italians in their installation work on the 14th floor (*id.* ¶ 5). As to Taiwanese workers, he was "tasked with checking the quality of their work and conformity with the construction drawings on our floors" (*id.* ¶ 8). The Turkish team included MEP specialists that the Italian team lacked (SAC ¶¶ 34, 60). As to IPI's recognition of the quality of the Turkish team's work, Fuat Mert Oztuna, a civil engineer, declares that IPI turned to the Turks to perform "re-installation and corrective action for installation in other areas of the building" because their fit-out work "was much better than previously [*sic*] installation" (Ex. 7A ¶ 7). Tellingly, IPI "wanted the entire Turkish team" – not particular individuals – to continue such support work (*id.*).

IPI's motion is full of distinctions without a difference. For example, the Turks performed overtime work, while the Italians were not (Mot. 14). The only respect in which this fact is material is that despite working overtime, the Turks somehow received smaller paychecks – a fact that supports the Turks' claims. The Turkish workers had a third-party recruitment agency that liaised with IPI (Mot. 15). Again, IPI fails to say how this fact is material to the comparison. Indeed, except when reciting the legal standard (Mot. 11–12), IPI makes no reference to materiality; the very word "material" is absent from its discussion and analysis.

IPI has noted inconsistencies among the observations in some of the declarants' statements and suggested they may derive from "confusion or laxity" (Mot. 16–17). That's Credibility determinations, however, are not appropriate at the motion-to-dismiss stage. *Martin v. Hotel and Transp. Consultants, Inc.,* Civ. No. 17-00088, 2018 WL 2470981, at * 4 ((D. Haw. June 1, 2018); *Sollberger v. Wachovia Sec., LLC,* No. SACV 09-0766, 2010 WL 2674456, at * 3 (C.D. Cal. June 30, 2010). In any event, these minor inconsistencies do not undermine the

8

overall consistency of the observations, from Turks and non-Turks, workers and supervisors, that the Turkish H-2Bs were paid substantially less even though they were comparably skilled and performing similar construction work.

For these reasons, IPI's motion to dismiss the Second Amended Complaint should be denied.

Respectfully submitted this 2nd day of December, 2022.

BANES HOREY BERMAN & MILLER, LLC

/s/
by Richard C. Miller, F0458
Attorney for Plaintiff

**CERTIFICATE OF SERVICE**

I certify that on December 2, 2022, I electronically filed the foregoing in the District Court for the Northern Mariana Islands via CM-ECF and that service was accomplished on all counsel of record through Notice of Electronic Filing.

/s/
Richard C. Miller, F0458