Joey P. San Nicolas
SAN NICOLAS LAW OFFICE, LLC
2nd Fl, ICC, Room 203
Gualo Rai, Saipan
Telephone: (670) 234-7659
Email: jpsn@sannicolaslaw.net

Daniel H. Weiner (admitted *pro hac vice*)
Amina Hassan (admitted *pro hac vice*)
Eleanor Erney (admitted *pro hac vice*)
HUGHES HUBBARD & REED LLP
One Battery Park Plaza
New York, NY 10004-1482
Tel.: (212) 837-6000
Fax: (212) 422-4726
daniel.weiner@hugheshubbard.com
amina.hassan@hugheshubbard.com
eleanor.erney@hugheshubbard.com

*Attorneys for Defendant Imperial Pacific International (CNMI), LLC*

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN MARIANA ISLANDS

| | |
|---|---|
| ÖZCAN GENÇ;, HASAN GÖKÇE, and SÜLEYMAN KÖŞ, on behalf of themselves and all other persons similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>IMPERIAL PACIFIC INTERNATIONAL (CNMI), LLC, and IMPERIAL PACIFIC INTERNATIONAL HOLDINGS LTD.,<br><br>Defendants. | Civil Case No. 1:22-cv-00002<br><br>**DEFENDANT IMPERIAL PACIFIC INTERNATIONAL (CNMI), LLC'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS THE SECOND AMENDED COMPLAINT WITH PREJUDICE**<br><br>Hearing: January 5, 2023 / Time: 9:00 AM |

**TABLE OF CONTENTS**

Introduction ...................................................................................................................................1

Argument .....................................................................................................................................2

I. THE COURT SHOULD DISMISS THE SAC FOR FAILURE TO PLAUSIBLY ALLEGE A PATTERN-AND-PRACTICE OF DISCRIMINATION. ...............................2

    A. The Opposition Does Not Resolve the Deficiencies in Plaintiffs' New "Group" Comparator Theory. .................................................................................................2

    B. Plaintiffs Concede That the SAC Does Not Plead Individual Comparators. ...........7

    C. The SAC Does Not Include Other Allegations to Plausibly Infer That It Was IPI's "Standard Operating Procedure" to Discriminate Against Turkish Workers. .........8

II. DISMISSAL OF THE SAC WITH PREJUDICE IS THE ONLY APPROPRIATE REMEDY ..................................................................................................................9

Conclusion ..................................................................................................................................10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Allen v. City of Beverly Hills*, 911 F.2d 367 (9th Cir. 1990) ........................................................9

*Ardalan v. McHugh*, 2014 WL 3846062 (N.D. Cal. Aug. 4, 2014)................................................10

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ..........................................................................................5

*Bartholomew v. Lowe's Home Ctrs., LLC*, 2020 WL 321372 (M.D. Fla. Jan. 21, 2020) ...............7

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ..........................................................................5

*Bess v. Adams & Associates, Inc.*, 2018 WL 4801951 (E.D. Cal. Oct. 3, 2018).............................3

*Colvin v. M.J. Dean Constr., Inc.*, 2022 WL 2110769 (D. Nev. June 10, 2022).............................5

*Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992 (9th Cir. 2010) ....................................................7

*Dog Bites Back, LLC v. JPMorgan Chase Bank, N.A.*, 563 F. Supp. 3d 1120 (D. Nev. 2021) ...................................................................................................................................9

*Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344 (6th Cir. 1998) ..................................6

*Houle v. Walmart, Inc.*, 447 F. Supp. 3d 261 (M.D. Pa. 2020) ......................................................3

*Moran v. Selig*, 447 F.3d 748 (9th Cir. 2006)...........................................................................3, 6

*Redwind v. W. Union, LLC*, 2019 WL 3069864 (D. Or. June 21, 2019) ........................................3

*Renati v. Wal-Mart Stores, Inc.*, 2019 WL 5536206 (N.D. Cal. Oct. 25, 2019) ............................3

*Thomas v. Sec'y of The U.S. Dep't of Veterans Affs.*, 2021 WL 2593643 (C.D. Cal. May 19, 2021) ..................................................................................................................................5

*Wang v. Am. Sai Green Corp.*, 2014 WL 1365740 (D. N. Mar. I. Apr. 4, 2014)............................4

Defendant Imperial Pacific International (CNMI), LLC ("IPI") submits this Reply in further support of its Motion to Dismiss Plaintiffs' Second Amended Complaint (ECF 38, "Op. Br.").

## Introduction

Contrary to Plaintiffs' suggestion in their Opposition (ECF 39, "Opp.", at 6), IPI never disputed that, to sustain their pattern-and-practice pay discrimination claim, Plaintiffs must plausibly allege it was IPI's "standard operating procedure" to discriminate against its Turkish workers as compared to its Taiwanese and Italian workers. IPI's position is simple: Plaintiffs fail to do that regardless of the theory of proof under which they attempt to fit their allegations.

<u>First</u>, Plaintiffs do not argue in their Opposition that the Second Amended Complaint (ECF 35, "SAC") sufficiently alleges individual Italian or Taiwanese comparators for a named Plaintiff or any other purported class member. It does not.

<u>Second</u>, having abandoned that theory, Plaintiffs now argue that it is sufficient for them to plead comparators at a "group" level—comparing "groups" of Turkish construction workers, foremen and supervisors to "groups" of Italian and Taiwanese construction workers, foremen and supervisors. But the Opposition does not resolve the deficiencies in Plaintiffs' new group comparator theory—deficiencies which IPI set forth in detail in its Opening Brief. Plaintiffs either ignore those deficiencies or otherwise provide no meaningful response, urging the Court to instead make "broad comparisons." (Opp. at 5.) However, the SAC must allege particularized facts for the Court to reasonably infer that the groups of Turkish workers and Italian and Taiwanese workers Plaintiffs seek for it to compare are similarly situated, *i.e.*, that Plaintiffs are comparing "apples and apples as opposed to apples and oranges." (ECF 23 at 14:9-13.) It does not. Rather, the SAC alerts the Court to differences among groups of different national origin such that it cannot plausibly infer

they are similar in all material respects as required by law.  In the end, Plaintiffs' new group comparator theory fails for the same reason their prior pleadings failed—the SAC does not sufficiently allege a plausible comparator, this time on a group-level.

<u>Finally</u>, the SAC also does not contain sufficient other "circumstantial" and "anecdotal" allegations (*see* Opp. at 7) for the Court to plausibly infer that it was IPI's "standard operating procedure" to discriminate against its Turkish workers because of their nationality.  The wage differential Plaintiffs point to means nothing without comparator evidence, which they do not plead sufficiently.

Accordingly, dismissal with prejudice is the appropriate remedy here.

## <u>Argument</u>

**I.  THE COURT SHOULD DISMISS THE SAC FOR FAILURE TO PLAUSIBLY ALLEGE A PATTERN-AND-PRACTICE OF DISCRIMINATION.**

    **A.  The Opposition Does Not Resolve the Deficiencies in Plaintiffs' New "Group" Comparator Theory.**

After repeating several allegations from the SAC (Opp. at 2-4), Plaintiffs begin with their newly-minted premise that the "relevant unit of comparison is the group, not the individual, because within each group – construction workers, foremen, supervisors – *the pay was the same for all individuals of the same nationality*."  (Opp. at 5 (emphasis added).)  Plaintiffs broadly contend that because "[c]onstruction specialties [allegedly] made no difference to IPI," they should not matter to the Court. (*Id*. at 1-2, 5.)  But, as IPI demonstrated in its Opening Brief, there is scant factual support in the SAC that "groups" of construction workers, foremen and supervisors of the same national origin had the same wage rate.  The SAC alleges only the allegedly uniform hourly wage rates for Italian construction workers ($25) and Italian foremen ($50). (Bell Decl. ¶ 11.)  It is

2

devoid of any factual allegations regarding the allegedly uniform wage rates for Turkish construction workers, Taiwanese workers and any supervisors.  (*See* Op. Br. at 13-14.)[1]  While Plaintiffs make the sweeping assertion that they "have plausibly alleged, through the [allegedly] consistent statements of many different first-hand observers, that there were no gradations in pay scale based on skill level or specialty" (Opp. at 6), not one of Plaintiffs' declarants makes that statement.  Because Plaintiffs' group comparator theory hinges on the assumption that IPI's wage rates across trades and specialties within one "national" group were the same, this deficiency is sufficient ground for the Court to dismiss Plaintiffs' theory, and the SAC.

Even if Plaintiffs were to overcome this hurdle, their group comparator theory suffers from another fundamental flaw.  Plaintiffs concede that proposed comparators must be similar "in all material respects."  (*See* Opp. at 4 (quoting *Moran v. Selig*, 447 F.3d 748, 755 (9th Cir. 2006)).)[2]  However, Plaintiffs do not provide the Court factual allegations to reasonably infer that the groups they seek to compare satisfy that standard.  As IPI set forth in its Opening Brief, the SAC demonstrates differences in (a) trades and specialties and (b) conditions of employment across groups of different national origin, and contains no factual allegations for the Court to reasonably

---

1. Although Plaintiffs allege the wage rates for the three named Plaintiffs (SAC ¶¶ 5-7), and the wage rate of one Taiwanese worker (ECF 35-1), they allege no facts for the Court to reasonably infer that all Turkish, and all Taiwanese, construction workers, foremen and supervisors, respectively had the same wage rates.

2. Plaintiffs cite a Middle District of Pennsylvania decision for the proposition that, "[i]n a pay discrimination claim, '[t]he complaint is not required to identify any comparators who have received more favorable treatment than plaintiff.'"  (Opp. at 4 (citing *Houle v. Walmart, Inc.*, 447 F. Supp. 3d 261, 280 (M.D. Pa. 2020).)  However, where a pay discrimination plaintiff does not identify comparators, he or she must allege sufficient other direct or circumstantial evidence for the court to plausibly infer discriminatory intent on the part of the employer.  *See Bess v. Adams & Associates, Inc.*, 2018 WL 4801951, at *5 (E.D. Cal. Oct. 3, 2018) (discussing different means for a plaintiff to allege discriminatory motive).  As discussed *infra*, at 8, the SAC does not do that.  In any event, where pay discrimination plaintiffs in the Ninth Circuit rely on the theory of disparate treatment from comparators, the similarly situated test applies.  *See Renati v. Wal-Mart Stores, Inc.*, 2019 WL 5536206, at *6 (N.D. Cal. Oct. 25, 2019) (applying similarly situated requirement to a Title VII pay-discrimination case on a motion to dismiss); *Redwind v. W. Union, LLC*, 2019 WL 3069864, at *4 (D. Or. June 21, 2019) (same), *report and recommendation adopted*, 2019 WL 3069841 (D. Or. July 12, 2019).

infer that the qualifications and experience of the Turkish workers, as a group, was materially similar to that of the groups of Italian and Taiwanese workers.  (Op. Br. at 14-16.)  Plaintiffs offer no meaningful response to these fatal deficiencies.

<u>First</u>, it is insufficient for Plaintiffs to argue that differences in trade and specialties among groups of different national origin are immaterial because IPI allegedly paid all construction workers, all foremen and all supervisors within one "national" group the same wage rates.  (Opp. at 5.)  Assuming *arguendo* that Plaintiffs sufficiently alleged that premise—which they do not—if Plaintiffs want the Court to compare groups of workers, they must plausibly allege those groups are materially similar.  Differences in what trades, tasks and role the group as a whole performed on the construction site undercut that purported similarity.  The differences among groups that the SAC identifies—"only the Turks had electricians and plumbers" and performed MEP work on all floors; the Italians workers "were sent to other floors for aluminum curtain wall installation;" and "Taiwanese workers worked on all floors as needed" (SAC ¶¶ 34, 60; Guzzardi Decl. at 2; Genç Decl. ¶¶ 6-8; Oztuna Decl. ¶ 7)—cannot reasonably support the inference that, at a group-level, the "group" of Turkish workers was performing the "same work" as the "groups" of Italian and Taiwanese workers.  Rather, they reasonably raise for the Court the issues of whether and to what extent these groups overlapped with regard to trades and specialties.  The Court must not be required to speculate on those issues, nor whether the allegedly uniform wage rate IPI paid to groups of different national origin was commensurate with the overall composition and role of those groups.  *See Wang v. Am. Sai Green Corp.*, 2014 WL 1365740, at *1 (D. N. Mar. I. Apr. 4, 2014) ("[T]he complaint must allege 'sufficient facts to raise' a plaintiff's 'right to relief above the

4

speculative level.'") (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)).

<u>Second</u>, Plaintiffs' cursory dismissal of overtime as an immaterial distinction (Opp. at 8) in a pay discrimination case is belied by the abundance of cases in which employees regularly sue employers for *depriving* them of the ability to work overtime.[3] Plaintiffs concede that Turkish workers were permitted to perform overtime work, while Italian workers were not. (*See* SAC ¶¶ 45, 49; Bell Decl. ¶ 12.) It is entirely plausible that Turkish workers, or the recruiting firm that hired and managed them (*see* Genç Decl. ¶ 4; Oztuna Decl. ¶¶ 14-15), negotiated or accepted a lower wage rate in exchange for the Turkish workers' ability to work overtime—regardless of whether and to what extent they used it—and for them to enjoy the benefit of a liaison in a foreign country, a point on which the SAC is silent with regard to groups of other national origin.

<u>Third</u>, Plaintiffs contend that the SAC contains allegations regarding qualifications and experience, and point to those of Plaintiff Ozcan Genç, a Turkish foreman, with a certification in "metal work, gypsum board drywall system and carpentry, and more than 20 years' experience in general construction." (Opp. at 7-8.) Plaintiffs miss the point. They must also plead facts regarding the qualifications and experience of their alleged comparators. The only similar factual allegations contained in the SAC are those related to Glenn Bell, one of Plaintiffs' declarants and the Australian project manager for the Italian crew, who has "40 years of experience managing residential, commercial, and high-rise construction projects" (Bell Decl. ¶ 4). Were Mr. Bell an appropriate Turkish or Taiwanese comparator for Mr. Genç—which he is not—that difference

---

[3] *See, e.g.*, *Thomas v. Sec'y of The U.S. Dep't of Veterans Affs.*, 2021 WL 2593643, at *1 (C.D. Cal. May 19, 2021), *report and recommendation adopted*, 2021 WL 2590160 (C.D. Cal. June 23, 2021); *Colvin v. M.J. Dean Constr., Inc.*, 2022 WL 2110769, at *1 (D. Nev. June 10, 2022).

alone could plausibly explain any alleged difference between his and Mr. Genç's IPI wage rates; it also illustrates the need for Plaintiffs to allege qualification and experience information for their alleged comparators, whether on some individualized or statistical group basis.

Plaintiffs cite *Moran v. Selig* in support of their group comparator theory, but that decision is entirely consistent with IPI's position. In *Moran*, retired Caucasian and Latino professional baseball players sued Major League Baseball ("MLB") for excluding them from medical and supplemental income plans it offered former Negro League players. Although both appellants and former Negro League players lacked the longevity to qualify for MLB's other benefit programs, the Ninth Circuit held that "the two groups [were] not similar in 'all material respects.'" 447 F.3d 748, 755 (9th Cir. 2006). The court observed that, unlike former Negro League players, appellants were never prevented from playing for an MLB team based on their race, and thus acquiring that longevity. *Id*. That difference could plausibly explain the difference in the two groups' access to the challenged plans, and rendered them dissimilar. Here too, the SAC fails to sufficiently allege that the groups of Turkish, Taiwanese and Italian workers were materially similar with regard to trades and specialties, conditions of employment, and qualifications and experience, one or a combination of which could plausibly explain the alleged difference in their wage rates.[4]

Plaintiffs also broadly argue that none of the differences among groups of different national

---

4. Plaintiffs also argue that the *Moran* court "did not focus on the circumstances of individual players, their skill levels, positions on the field, or achievements." (Opp. at 5.) However, the *Moran* court did not need to do so because the material relevant difference between appellants and former Negro League players—whether they were prevented from playing for an MLB team based on their race—applied uniformly across the two groups. Here, in contrast, relevant job-related characteristics that can explain differences in pay—including trade, specialty, qualifications and experience—are necessarily individual in nature. *See Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998) (plaintiffs must allege that their employment situation is similar to an alleged comparator "in all of the *relevant* aspects.") (cited in Opp. at 4).

6

origin matter because, based on the alleged consistent observations of Turkish and non-Turkish workers, "Turkish H-2Bs were paid substantially less even though they were comparably skilled and performing similar construction work." (Opp. at 9.)[5]  However, generally referring to the "skills" of Turkish workers and Italian or Taiwanese workers, without referring to their trades, specialties, qualifications and experience, and claiming they were performing "similar work" does not help the Court infer that those groups are materially similar. (*Supra* 4-5.)

### B. Plaintiffs Concede That the SAC Does Not Plead Individual Comparators.

Plaintiffs do not contend that the SAC sufficiently pleads any individual comparators, because it does not. Rather, Plaintiffs argue that, "IPI erroneously asserts that the requirement to point to specific comparators" applies in both individual and class contexts. (Opp. at 6.) Plaintiffs are incorrect. As demonstrated by *Bartholomew v. Lowe's Home Ctrs., LLC*, a case on which Plaintiffs also rely (*id.*), plaintiffs in pattern-and-practice class actions may rely on individual or group comparators to infer an alleged pattern of discrimination; when they do, they must show that they are "similarly situated in all material respects to [the comparators]." 2020 WL 321372, at *6-7 (M.D. Fla. Jan. 21, 2020).[6] Here, the SAC does not sufficiently plead plausible individual comparators (Op. Br. at 17-18), nor plausible group comparators (*see supra* 2-7.)

---

5. Contrary to Plaintiffs' contention, IPI is not asking the Court to make credibility assessments at this stage. (*See* Opp. at 8.) As set forth in IPI's Opening Brief (at 16-17), where Plaintiffs' declarants allege that the quality of work and skill of Turkish, Italian and Taiwanese workers, *including* plumbers and electricians, was the same, the Court need not accept those observations as true because the SAC unambiguously alleges that there were only Turkish plumbers and electricians. *See Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010) (holding that a court is not "required to accept as true … unwarranted deductions of fact, or unreasonable inferences.").

6. The Opposition is misleading in stating that *Bartholomew* "applied a different test in the class context than in the nonclass context." (Opp. at 6.) The district court in *Bartholomew* explained that the "pattern of shifting inferences provided by *McDonnell Douglas* is not directly applicable to class actions." *Bartholomew*, 2020 WL 321372 at *6. The court did not dispense with or vary the test for plausible comparators.

7

**C. The SAC Does Not Include Other Allegations to Plausibly Infer That It Was IPI's "Standard Operating Procedure" to Discriminate Against Turkish Workers.**

Contrary to Plaintiffs' contention, the SAC does not contain other (non-comparator) "circumstantial and anecdotal" allegations for the Court to plausibly infer that it was IPI's "standard operating procedure" to discriminate against its Turkish workers. (Opp. at 6-7.)

Plaintiffs argue that they satisfy the burden of providing other "circumstantial evidence" because the SAC "proffers" that "Turkish H-2Bs were paid substantially less than H-2Bs recruited from Italy and Taiwan," and that this difference was more than the difference between the range of wages for different categories of workers included in IPI's U.S. Department of Labor ("DOL") certification for H-2B workers. (Opp. at 7.)[7] Even if this wage differential were sufficiently pleaded, Plaintiffs' proffer is nothing but another argument based on purported comparator evidence. The alleged wage differential is meaningless without Plaintiffs sufficiently pleading that the "Turkish H-2Bs" were similarly situated to the Italian and Taiwanese H-2B workers. They do not do so.

Plaintiffs also contend that it is not plausible "that IPI routinely paid its Turkish H-2B workers, foremen, and supervisors a third of the wage it paid Italian and Taiwanese H-2Bs because the Turks, to a man, were so much less skilled and experienced." (Opp. at 7.) IPI has not argued that. Rather, IPI points to Plaintiffs' own pleading for differences in the composition and conditions of employment of groups of different national origin and the SAC's silence on the experience and qualifications of the groups Plaintiffs seek to compare. It is Plaintiffs' burden to

---

7. Plaintiffs provide no explanation why the range of wages included in IPI's U.S. DOL certification is significant. Rather, that different wage ranges existed for different specialties contradicts Plaintiffs' claim that IPI did not "distinguish one construction specialty from another." (Opp. at 2.)

give the Court sufficient facts to infer that the groups they seek to compare are materially similar such that the difference in their respective wage rates is plausibly the result of IPI's alleged discriminatory intent.  Here, the SAC does not satisfy that burden.

## II.   DISMISSAL OF THE SAC WITH PREJUDICE IS THE ONLY APPROPRIATE REMEDY.

As the Court previously observed, dismissal with prejudice is warranted where there is "undue delay, bad faith or dilatory motive on the part of the movant [for leave to amend], repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the [] party [opposing leave to amend], [or] of futility of the amendment."  (ECF 34 at 14 (quoting *Dog Bites Back, LLC v. JPMorgan Chase Bank, N.A.*, 563 F. Supp. 3d 1120, 1123 (D. Nev. 2021)).)

Here, the Court should dismiss the SAC with prejudice for the reasons stated in IPI's Opening Brief:  despite the Court affording Plaintiffs three opportunities to amend and clear instructions on how to do so, Plaintiffs fail to cure the fundamental flaw in their pleading, *i.e.*, failure to allege plausible comparators.  (Op. Br. at 23-24 (citing case law).)  Plaintiffs' Opposition does nothing to resolve that failure. *See Allen v. City of Beverly Hills*, 911 F.2d 367, 373 (9th Cir. 1990) ("The district court's discretion to deny leave to amend is particularly broad where plaintiff has previously amended the complaint.").

The Opposition, which relies heavily on alleged observations of various declarants, further underscores the need for the Court to bring this litigation to an end.  In defending their Original Complaint, Plaintiffs argued that "because of the language barrier they didn't talk or socialize with the Taiwanese workers."  (ECF 13 at 5.)  Nevertheless, in their subsequent amended complaint, Plaintiffs alleged that named Plaintiff Köş befriended Italian and Taiwanese workers and saw their

9

paychecks, and Turkish workers Fuat Mert Oztuna and Senol Barut socialized with some of the Italian and Taiwanese workers and learned about their wages. (ECF 20 ¶¶ 27-29.) Likewise, in defending that complaint, Plaintiffs argued that crews of different national origin were "segregated from one another [and had] limited or no opportunity to observe each other on the job." (ECF 26 at 1.) Yet, in the SAC, Plaintiffs allege that some Turkish and Italian workers worked "side by side" (SAC ¶¶ 27, 59), and that named Plaintiff Genç documented this work in photographs (*see* ECF 35-5 at 15-16). Not only have Plaintiffs taken contradictory positions in their pleadings, but a large portion of the information they now rely on was also reasonably available to them much earlier in this litigation. (*See* Opp. at 3-4, 7-8 (relying on statements of named Plaintiff Mr. Genç, and Mr. Oztuna, who submitted a declaration dated July 13, 2022).) The Court afforded Plaintiffs ample opportunity to reframe their pleading in multiple ways. Plaintiffs' pleading still fails to plead a sufficient claim, and IPI should not be required to continue defending against it. Accordingly, dismissal with prejudice is the appropriate remedy here.[8]

## Conclusion

IPI respectfully requests that the Court dismiss the SAC with prejudice.

---

8. On November 30, 2022, two days before their Opposition was due, Plaintiffs wrote to IPI's counsel attaching a November 5, 2022 affidavit, stating that they "plan to move for permission to submit it as a supplemental exhibit," and inquiring as to IPI's "position" on it. IPI informed Plaintiffs they would oppose any such motion. Plaintiffs did not move the Court to do anything with regard to their new affidavit, noting instead in a footnote in the Opposition that they "are now in possession of a signed declaration by th[e] Taiwanese welder" whose observations purportedly are included in paragraph 44 of the SAC. (Opp. at 3, n.2.) Plaintiffs do not explain their behavior in referring to a document that is not before the Court. *See Ardalan v. McHugh*, 2014 WL 3846062, at *5 (N.D. Cal. Aug. 4, 2014) ("In general, a court should not look beyond the four corners of a complaint when ruling on a motion to dismiss."). Nor should the Court credit this unexplained reference. *First*, the already generous November 4, 2022 deadline to file the SAC and any material in support of it has long passed. *Second*, Plaintiffs appear to have strategically chosen not to move the Court to "supplement" the SAC with the affidavit, and the Court should not permit Plaintiffs to use it as a backdoor to seek yet another amendment. *Third*, to the extent this affidavit supports Paragraph 44—that a "Taiwanese welder told Plaintiff Genç that he saw Turkish and Italian welders on the job and observed that they were capable of special welding activities on MEP work beyond the abilities of the Taiwanese welders" (SAC ¶ 44)—it does not help Plaintiffs. There is no allegation in the SAC that there were any Taiwanese MEP welders; rather, the SAC alleges that the Turkish workers performed MEP work on all floors (*id*. ¶¶ 34, 60; Oztuna Decl. ¶ 7).

Dated: December 9, 2022  Respectfully Submitted,

/s/ Amina Hassan

Daniel H. Weiner (admitted *pro hac vice*)
Amina Hassan (admitted *pro hac vice*)
Eleanor Erney (admitted *pro hac vice*)
HUGHES HUBBARD & REED LLP
One Battery Park Plaza
New York, NY 10004-1482
Tel.: (212) 837-6000
Fax: (212) 422-4726
daniel.weiner@hugheshubbard.com
amina.hassan@hugheshubbard.com
eleanor.erney@hugheshubbard.com

Joey P. San Nicolas
SAN NICOLAS LAW OFFICE, LLC
2nd Fl, ICC, Room 203
Gualo Rai, Saipan
Telephone: (670) 234-7659
jpsn@sannicolaslaw.net

*Attorneys for Defendant Imperial Pacific International (CNMI), LLC*

11

Joey P. San Nicolas
SAN NICOLAS LAW OFFICE, LLC
2nd Fl, ICC, Room 203
Gualo Rai, Saipan
Telephone: (670) 234-7659
Email: jpsn@sannicolaslaw.net

Daniel H. Weiner (admitted *pro hac vice*)
Amina Hassan (admitted *pro hac vice*)
Eleanor Erney (admitted *pro hac vice*)
HUGHES HUBBARD & REED LLP
One Battery Park Plaza
New York, NY 10004-1482
Tel.: (212) 837-6000
Fax: (212) 422-4726
daniel.weiner@hugheshubbard.com
amina.hassan@hugheshubbard.com
eleanor.erney@hugheshubbard.com

*Attorneys for Defendant Imperial Pacific International (CNMI), LLC*

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN MARIANA ISLANDS

| | |
|---|---|
| ÖZCAN GENÇ, HASAN GÖKÇE, and SÜLEYMAN KÖŞ, on behalf of themselves and all other persons similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>IMPERIAL PACIFIC INTERNATIONAL (CNMI), LLC, and IMPERIAL PACIFIC INTERNATIONAL HOLDINGS LTD.,<br><br>Defendants. | Civil Case No. 1:22-cv-00002<br><br>**CERTIFICATE OF SERVICE** |

  I hereby certify that, on December 9, 2022 (ChST), I electronically filed the foregoing

with the Clerk of Court for the United States District Court for the Northern Mariana Islands

using the CM/ECF system.  A true and correct copy of this motion has been served via the

1

1 | Court's CM/ECF system on all counsel of record.

2 |                              */s/ Amina Hassan*
3 |                                Amina Hassan

2

103941986